[Civ. No. 5337. First Appellate District, Division Two.—March 22, 1926.]

## GERMAN PUBLISHING COMPANY (a Corporation), Respondent, v. J. H. SCHEIDT, Appellant.

[1] MONEY HAD AND RECEIVED—MISAPPROPRIATION—CORPORATIONS—FINDINGS—EVIDENCE.—In this action by a corporation to recover a sum of money alleged to have been received by defendant as president of said corporation, the evidence was sufficient to support the findings to the effect that said money was received by defendant for the use and benefit of plaintiff and wrongfully appropriated to defendant's own use.

[2] ID.—CORPORATIONS—SALE OF STOCK—CONTRACT—PARTIES.—In such action, the defendant cannot raise the question that a contract between the plaintiff and a third party for the sale of stock (in payment of which the money in question was received by defendant) was illegal because at the time it was made the plaintiff did not have the permit of the corporation commissioner to sell such stock, where defendant was not a party to the contract.

(1) 14a C. J., p. 153, n. 50.    (2) 14a C. J., p. 151, n. 9 New.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Kauke for Appellant.

Hugh Powell Graves for Respondent.

LANGDON, P. J.—This appeal is by the defendant from a judgment against him in an action brought by plaintiff corporation to recover fifteen hundred dollars alleged to have been received by defendant as the president of said corporation for the use and benefit of the corporation and wrongfully appropriated to his own use.

The record contains a mass of conflicting testimony, rendered particularly unsatisfactory and confusing, in many instances, by the fact that many of the witnesses had a most imperfect and limited knowledge of the English lan-

2. See 6 Cal. Jur. 781.

guage. However, out of the conflict, the trial court has found: That on or about November 3, 1922, defendant, while acting as president and director of plaintiff, received for the use and benefit of plaintiff the sum of fifteen hundred dollars in cash; that plaintiff at said time was, and ever since has been, the lawful owner of and entitled to the immediate possession of the said fifteen hundred dollars; that defendant appropriated and used in his own private business the said fifteen hundred dollars in cash received by him for plaintiff's use as aforesaid.

[1] Our discussion will be confined merely to the evidence in the record which supports the findings. The transcript reveals that the plaintiff was the owner and publisher of a newspaper called the "California Post," with offices at Fresno, California. Defendant, while acting as president and director of plaintiff, received on November 1, 1922, a certain check for fifteen hundred dollars belonging to plaintiff, drawn in favor of the "California Post Building Fund." This check had been given to Mr. Mayer, secretary of the plaintiff company, for the company by F. K. Emich in payment of the purchase price of three hundred shares of the treasury stock of the company, which it was agreed should thereafter be issued to Emich when a permit to issue additional stock could be obtained from the commissioner of corporations.

Before this payment by Emich the directors of the plaintiff company had passed a resolution and made plans for a new building for the conduct of its business, and to obtain the necessary funds for this purpose had agreed to levy an assessment upon the outstanding stock and to sell such additional stock as might be necessary to raise the amount required, and had also agreed that the money to be received from these sources should be deposited in the bank to the credit of the plaintiff, but in a special account to be designated "California Post Building Fund" account. As we have stated, the check in question was drawn in favor of this fund. When it was received by the secretary he took it to the president of the corporation, the defendant here, who accepted it, expressly promising to deposit it in the account of plaintiff. At this time defendant had full knowledge of the facts herein recited and promised to issue the treasury stock to Emich as soon as the permit should be

received from the corporation commissioner. On December 12, 1922, this permit was received.

Instead of depositing the check in the account of plaintiff, defendant cashed it and used the proceeds in his personal business dealings and concealed this fact from the other stockholders and directors of the plaintiff corporation, who did not discover the misdirection of this money for several months.

During all this time, and until October, 1923, defendant retained in his own possession, at his store, the stock certificate book of the company and refused to deliver it up or return it to the company's office, though repeatedly requested to do so by the secretary. On March 17, 1923, after repeated demands made upon defendant by Emich for issuance to him of the three hundred shares of treasury stock which he had subscribed for, defendant, while acting as president and director of plaintiff, issued and delivered to Emich a certificate for three hundred shares of company treasury stock.

Defendant refused to repay to plaintiff the fifteen hundred dollars paid by Emich and when action was brought to recover this amount he sought to justify his retention of it by claiming that the certificate for stock issued to Emich was not for company treasury stock but represented a sale by him of three hundred shares of his own stock in the company, and that this transaction was in accordance with an agreement between himself and Emich. There is testimony in the record emphatically contradicting such claim and the trial court has found that there was no understanding or agreement of any kind at any time between John Mayer, F. K. Emich, and defendant, or either of them, that defendant should, at his election, apply the said fifteen hundred dollars received by him for plaintiff's use and benefit in payment to himself for three hundred shares or any shares of his own stock, which he might thereafter elect to sell and transfer to said Emich and that the fifteen hundred dollars was not delivered to nor received by said defendant for such purpose.

This last finding is supported by the record.

The foregoing discussion of the evidence and findings disposes of the appeal. [2] The only question raised, out-

side of the claim that the evidence does not support the findings, is that the contract between the company and Emich for the sale of stock was illegal because at the time it was made the company did not have the permit of the corporation commissioner to sell this stock. This question cannot be raised by defendant in a collateral proceeding. He was not a party to the contract. He received the money for the corporation and must account to the corporation for it.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.