[Civ. No. 8618. Third Dist. Sept. 2, 1955.]

IZZIEDOR PORES et al., Appellants, v. PURITY MILK COMPANY (a Corporation) et al., Respondents.

[Two Cases.]

N. A. BUOTICH, Appellant, v. EDWARD ALVES, Respondent.

*Assigned by Chairman of Judicial Council.

Smith & Zeller, Charles A. Zeller and Van Dyke & Shaw for Appellants.

Mazzera, Snyder & DeMartini, Loraine B. Early and J. Calvert Snyder for Respondents.

FINLEY, J. pro tem.*—This appeal is from the judgments in three separate cases which were consolidated for trial. The

*Assigned by Chairman of Judicial Council.

appeal is founded upon only one issue which is common to all three cases, that issue being whether appellants are entitled to redress from respondent Edward Alves personally by reason of circumstances which appellants claim justify disregarding the corporate shield of a California corporation set up by Alves and others and known as "Purity Milk Co." Appellants maintain that the corporation was merely the *alter ego* of Edward Alves; that in all transactions involved prior to the time the corporation was declared bankrupt and ceased to do business he conducted business as an individual and looked to the corporate entity only as a shield to protect him from liability. The trial court found against appellants, holding that the facts and circumstances did not warrant disregard of the corporate entity and the fixing of personal liability on respondent Alves excepting for obligations maturing or incurred by him after bankruptcy proceedings had been instituted as a result of which the corporation had ceased doing business.

In plaintiffs' opening brief appears this statement:

"At the outset, Appellants concede that the question of disregard of the corporate entity and the application of the theory of alter ego generally involves a factual determination by the trial court on the issue of whether the corporate entity is or is not to be disregarded and in the ordinary case the Appellate Courts are bound by the determination of the trial court on such matters. However, it is the Appellants' contention that in this particular case the evidence directing the disregard of the corporate entity is overwhelming and conclusive, and secondly, that under the factual situation presented in these cases, the corporate entity *must, as a matter of law, be disregarded.*"

We agree with appellants that cases of this nature must, of necessity, depend upon a factual determination by the trial court, but we must also carry the proposition a step further and repeat what has so often been said, viz., that if the factual determination made by the trier of fact is supported by competent and legally sufficient evidence, an appellate court is bound by that determination even though there may be an abundance of record evidence to the contrary. We say record evidence advisedly, because only words, documents and material evidence can ordinarily constitute a record on appeal. The attitude, demeanor, conduct or appearance of the witnesses are not fully reflected, even though perchance some remark or statement appearing in the

record may provide a clue thereto. An appellate court dealing of necessity with the script cannot accurately reconstruct in all its facets and detail the drama from which the script evolves. It has therefore been long conceded that the trier of fact, whether it be judge or jury, is in much better position to size up a situation than would be an appellate court dealing with exhibits and a lifeless record. There are exceptions, of course, as when an appeal embraces only a dispute based upon the interpretation of written instruments or upon exhibits which depend not at all or possibly only slightly upon oral testimony. But when witnesses testify and such testimony is substantial as a factor in resolving differences, an appellate court simply cannot be in position to as accurately appraise any situation as can the court or the jury attending the trial.

The consolidated cases before us took almost three weeks to try. The reporter's transcript contains 1,373 pages most of which is a record of oral testimony. From our examination of the record it appears as appellant has stated that "the very great bulk of all evidence favorable to either side in these respective cases is undisputed." But it is also true, as respondent has observed, that: "Apparently it is in the interpretation of the evidence that the parties differ, a difference of no importance, inasmuch as the trial court resolved it in favor of the Defendant. It is axiomatic that the appellate court will not disturb the ruling of the trial court in a case such as this, even though it might have come to a different conclusion had the matter been presented to it originally."

To outline the situation generally, it appears that prior to 1948 appellant Izziedor Pores was engaged in the business of processing milk and manufacturing ice cream in the city of Stockton. Respondent Alves and one Paul Van Till were supplying him with milk. In December of 1948 Pores leased the building, premises, equipment and business to one George L. Montgomery. Montgomery carried on the business with some help from Pores until December, 1949. During this period Montgomery secured the Art-Lite Neon Sign Company to provide him with a neon sign on a so-called "Rental or Lease Agreement." It contained an option giving Montgomery the privilege of paying certain rental for a period of twelve months and then the sum of $3,756, and thereafter owning the sign, or of paying the rent for a period of 36 months and thereafter owning the sign. This agreement forms

the basis of the action against respondent Alves on behalf of N. A. Buotich doing business as Art-Lite Neon Sign Company.

Up to December, 1949, Montgomery was in continual financial difficulties and issued numerous checks upon which payment was refused by the bank. In order to assist him and maintain a market for their milk respondent Alves and Paul Van Till guaranteed a note for Montgomery. Thereafter Montgomery suggested to Alves and Van Till that they go into business with him as his partners. Instead of so doing, a California corporation called ''Purity Milk Company'' was formed, the incorporators being George L. Montgomery, Paul Van Till and Edward Alves. Two hundred shares of stock were issued, 50 shares each to Alves and Van Till for $10,000 cash advanced by them to the corporation, and 100 shares to Montgomery upon the representation that his interest in the business under the Pores lease was worth in the neighborhood of $10,000.

Under Montgomery's management of the business things seemed to go from bad to worse. He was finally eliminated as manager, the position of manager being taken over by Alves. As a result of transactions unnecessary to relate here Alves took over Montgomery's stock and thereafter apparently managed and operated the business pretty much according to the dictates of his own judgment. The record discloses, however, that he and Van Till had loaned the corporation substantial sums of money to keep the business going. It also discloses that certain corporate assets were mortgaged by the corporation to Alves and the mortgage foreclosed by him to secure reimbursement.

We cannot see that it would serve any useful purpose were we to recite here all of the various transactions referred to by counsel in their briefs. It would help but little if at all in establishing precedent for future guidance in such cases. It is not the province of a reviewing court to comment on each evidentiary conflict or disagreement or to present a detailed argument on the sufficiency of the evidence to support the findings. (*Sonkin* v. *Hershon*, 130 Cal. App.2d 491 [279 P.2d 156]; *Gillespie* v. *Gillespie*, 121 Cal. App.2d 95, 97 [262 P.2d 607]; *De Freitas* v. *De Freitas*, 133 Cal.App.2d 769, 772 [285 P.2d 111].) We deem it sufficient to say that it seems unlikely that either appellant here was misled or materially damaged by respondent Alves' conduct of the corporate affairs. The agreements upon which they each seek to recover were entered into with Montgomery

whose conduct of the business both before and after incorporation seemed to be characterized by a continued and mounting deficit. None of the evidence drawn to our attention establishes or even indicates that Alves was prospering at the expense of these creditors. The evidence on the contrary rather strongly points to the fact that Alves, through all his loans and advances to Montgomery and later to the corporation to keep them going and in business, was by far the heaviest loser of any. Appellants' arguments and citations of authority relative to irregularities attending the issuance of the stock and the assumption by the corporation of liabilities of Montgomery or Alves as officers are unavailing for we have here no question of injury resulting to a stockholder either by the manner in which the stock was issued or distributed or on account of assumption by the corporation of personal liabilities of an officer. A damaged stockholder, had there been such, would obviously have been in position to challenge wrongful acts in either category. ■ But appellants have not pointed out how they were damaged by either failure to comply with technical legal stock issue requirements or the corporate assumption of an obligation owing by Montgomery to Alves. They have no interest in the stock and therefore are not in position to question compliance with the law pertaining thereto. See *Ramirez* v. *Thomas Productions, Ltd.*, 10 Cal.App.2d 338 [51 P.2d 895]; *Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718 [134 P.2d 777]; *Wortley* v. *Wood-Callahan Oil Co., Ltd.*, 17 Cal.2d 762 [112 P.2d 226]; *Julian* v. *Schwartz*, 16 Cal.App.2d 310 [60 P.2d 887]; *Wachner* v. *Richardson*, 14 Cal.App.2d 422 [58 P.2d 714]; *German Pub. Co.* v. *Scheidt*, 77 Cal.App. 238 [246 P. 88].

■ As stated above, the agreements here sued upon were originally obligations of Montgomery and predated existence of the corporation. No reason is shown why suit could not have been brought by either appellant long before Alves assumed the management or even shortly thereafter if either felt that Alves' conduct of corporate affairs was injurious to or in violation of said appellants' legal rights. At the time the agreements were entered into the corporation could not have been, under any theory, the *alter ego* of Alves, for the corporation did not exist and Alves was not a party to the original transactions. Had they originally dealt to their detriment with a corporation being manipulated by Alves solely for his benefit and protection the situation would present quite a different aspect, but appellants here have not

established to our satisfaction that the evidence as it appears here is legally insufficient to support the trial court's findings and judgment. ■ As the court stated in *Estate of Phelps,* [1]132 Cal.App.2d 850, 853 [283 P.2d 293] : "Where an appellant has failed to show that the trial court was wrong it is not incumbent upon a reviewing court to engage in a dissertation upon the law for the purpose of demonstrating that the court was right." See also *Risley* v. *Lenwell,* 129 Cal. App.2d 608 [277 P.2d 897] ; *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427 [45 P.2d 183] ; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689] ; *Hayden* v. *Hatch,* 134 Cal.App.2d 758 [286 P.2d 541].

The judgments are affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied September 22, 1955, and appellants' petition for a hearing by the Supreme Court was denied October 26, 1955.