[Civ. No. 9558. Third Dist. June 18, 1959.]

ARTHUR P. SMITH, Appellant, v. PANON HEILMAN, Respondent.

 

Leonard G. Husar and Herbert Chamberlain for Appellant.

Smith & Zeller for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment declaring and decreeing that appellant is the natural father of Laurel Smith, the daughter of respondent Panon Heilman, his former wife, in an action brought by appellant seeking a declaration that he was not the father of said child.

The complaint alleges that the plaintiff and defendant were married October 22, 1943, and were divorced January 28, 1954; that during the period from April, 1945, to November 17, 1945, plaintiff was on naval duty in the South Pacific and during that time did not cohabit with defendant; that on June 7, 1946, when plaintiff was again on naval duty in the South Pacific, defendant gave birth to a mature female infant of full term gestation; that defendant represented to plaintiff that said child was born three months prematurely and was plaintiff's child; that plaintiff did not learn that such representation was false until July, 1956; and upon information and belief plaintiff alleges that he cannot be, and is not, the father of said child.

Defendant in her answer admits that she and the plaintiff were married on October 22, 1943; that they were divorced on January 28, 1954; and that she gave birth to the child in question on June 7, 1946. She denied all other allegations in the complaint. Defendant affirmatively alleged that "it was adjudicated . . . in the divorce proceedings between the parties . . . on the 28th day of January, 1954, in the Superior Court of the State of Washington for Kitsap County, that the female child referred to . . . was the lawful issue and child of the plaintiff and that any issue as to the paternity of said child was finally adjudicated and determined by the decree of the said Court by said judgment regularly and duly made and entered." The court found that said child was born to

*Assigned by Chairman of Judicial Council.

plaintiff and defendant as the issue of the marriage and that said child was born on June 7, 1946. It further found "That prior to the commencement of this action it was adjudicated in that certain action in the Superior Court of the State of Washington for Kitsap County, Panon Smith, plaintiff, vs. Arthur P. Smith, defendant, Action No. 31638, that the plaintiff in said Washington action and the defendant in this action was the mother, and the defendant in said Washington action and the plaintiff in this action was and is the father of said minor child, Laurel Smith; that said judgment was regularly and duly made and entered by the said Superior Court of the State of Washington for Kitsap County; that said judgment was, prior to the commencement of this action, final; that no motion for new trial was made therein nor any appeal taken therefrom; that said judgment was free of any fraud, either intrinsic or extrinsic, and free of any deceit or fraud practiced in said action by any of the parties thereto."

As a conclusion of law the court made a declaration in accordance with the terms of section 1060, Code of Civil Procedure, to the effect that plaintiff is the father of Laurel Smith, "and that said judgment so entered is a valid, subsisting, lawful judgment and binding on the parties and finally adjudicates the paternity of said child, . . ."

The final judgment decreed and declared "That Laurel Smith, Daughter of Panon Heilman, defendant, is the daughter of the plaintiff, Arthur P. Smith, and Arthur P. Smith is the natural father of said Laurel Smith."

The pertinent facts as disclosed by the record are: Plaintiff was away from his wife and in active service of the Navy from the middle of April, 1945, until about November 17, 1945. He rejoined his wife on the 21st or 22d day of November, 1945, and they cohabited until he resumed active service in the Navy around February 4, 1946. Before he left she told him she was pregnant and that a doctor had told her the baby would be born around August 13, 1946. While he was away she gave birth to the child in question on June 7, 1946. Plaintiff testified that the first news of the birth came from his brother when they met on the island of Saipan in July of 1946. A month later he testified that he received a letter from defendant in which she said the baby was born prematurely in the sixth month of pregnancy. The defendant testified that she wrote to her husband advising him of the birth of a baby within a few days after its birth and that the Red Cross had been instructed to send her husband a telegram on the same

day on which the baby was born. Defendant testified that the child was born prematurely. However, the official birth certificate shows that the child was born in the ninth month of pregnancy, and that a serological test for syphilis in the mother had been made in the fourth month of gestation. The records of the hospital where the defendant was confined show that the delivery was normal, and the baby weighed 8 pounds, 9 ounces, at birth, and was not in the incubator at any time. It was the testimony of defendant that she did not have sexual relations with any man other than the plaintiff in this action from the date of their marriage to the date of their divorce, the divorce having been entered in the year 1954, over seven years after the birth of the child. It was the testimony of plaintiff that he believed at all times he was the father. The evidence indicates a potential period of 198 days between the date of possible conception and the date of the birth of the child.

By stipulation of the parties blood tests of plaintiff, defendant, and the child (Laurel) were taken pursuant to the Code of Civil Procedure, sections 1980.1-1980.7, and it appears that the report of the hematologist was considered by the court but is not in the record. It appears in the briefs that the report states: "The only possible conclusion is that Mr. Arthur P. Smith cannot be excluded as the father of Laurel . . ."

Appellant contends that there is no substantial evidence to support the findings of the trial court. Section 193 of the Civil Code provides as follows: "All children born in wedlock are presumed to be legitimate."

And in *Murr* v. *Murr*, 87 Cal.App.2d 511 [197 P.2d 369], a case wherein the facts are very similar to the facts in the instant case, the court lays down the rules applicable to presumptions in such a case. The court said at page 513:

"Plaintiff and defendant were married on December 28, 1941. Plaintiff enlisted in the Navy on February 10, 1942, and thereafter the parties were absent from each other until the wife visited him in New Jersey for approximately two weeks in January, 1943. Thereafter they were absent from each other until he visited the wife in Los Angeles from the 15th or 17th of July, 1943, to the 22d day of July, 1943. Thereafter they were absent from each other until November, 1944. The wife gave normal birth to a mature child, weighing 6¼ pounds, on January 21, 1944, which date was 190 days after July 15, 1943, or 188 days after July 17, 1943. The birth certificate, made by

the attending physician, Dr. Rue, stated that the pregnancy was a nine-months' pregnancy. The wife testified that she had never had sexual intercourse with anyone other than her husband.

"Section 1962 of the Code of Civil Procedure provides in part that: 'The following presumptions, and no others, are deemed conclusive: . . . 5. The issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate.' Section 1963 of the Code of Civil Procedure provides in part that: 'All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: . . . 31. That a child born in lawful wedlock, there being no divorce from bed and board, is legitimate.' In *Estate of McNamara*, 181 Cal. 82 [183 P. 552, 7 A.L.R. 313], the court was considering whether the presumption of legitimacy was conclusive or disputable, under circumstances where the period of gestation was 304 days and the birth of the child was not within the normal or usual operation of the laws of nature. The court therein held (p. 95) that the presumption was not conclusive, and that the presumption was conclusive only when the birth of the child came within the normal period of gestation. In *Estate of Walker*, 180 Cal. 478 [181 P. 792], the court held (p. 491) that the presumption of legitimacy should be considered conclusive if the husband and wife were cohabiting and it was possible under the laws of nature for the husband to be the father of the child. It was also said therein (p. 491) that '[I]t is always permitted to show that it was not possible by the laws of nature for the husband to be the father, as by showing impotency on his part, want of intercourse during the possible period of conception . . .' As above stated, in the present case the period of gestation was 188 or 190 days. In *Dazey* v. *Dazey*, 50 Cal.App.2d 15 [122 P.2d 308], it was said at page 20, in referring to a medical textbook, that ' "It is customary to reckon the length of pregnancy as nine calendar months, or ten lunar months, two hundred and eighty days' duration, dating from the first day of the last menstruation." ' It was also said therein, at page 20, that: 'This author also plainly states that if we compute the period from fruitful coition to birth, it [period of gestation] varies from 220 days to 330 days.' The attending physician, called as a witness by defendant, testified that, in determining the date when a child will be born, the members of the medical profession count 280

days from the last menstrual period, but if they could actually know the date of fruitful coition they would count the time of delivery from that date; that there is no recognized rule in the medical profession that the periods of pregnancy range from 220 days to 330 days; that there is no hard and fast rule limiting the periods of pregnancy; that he would not consider it an average case if a child were born 190 days after fruitful coition, but he would not say that it was an abnormal case. Under the circumstances here, the presumption as to legitimacy should be regarded as disputable. . . .''

A certified copy of the birth certificate is prima facie evidence of the facts stated in it (Health & Saf. Code, § 10551), and therefore the certificate herein is prima facie evidence that the pregnancy was of nine months' duration. A mature child having been born after an alleged gestation period of six and one-half months (198 days), which period according to authoritative medical opinion was about one month shorter than the shortest known period of gestation for such a birth and the birth certificate being prima facie evidence that it was a nine-months' pregnancy, the presumptions hereinabove noted became disputable presumptions and are not determinative of the issue in this case. Hence the legitimacy of the child involved became a question of fact, and if, under the familiar rule on appeal, there is any substantial evidence to support the judgment, it must be affirmed. All conflicts must be resolved in favor of the prevailing party and the evidence viewed in the light most favorable to her. (*O'Banion* v. *Borba*, 32 Cal.2d 145, 147 [195 P.2d 10].) With this rule in mind we feel that there is substantial evidence to sustain the court's declaration of legitimacy of the child, and that the judgment in the Washington divorce decree was free of any fraud, either intrinsic or extrinsic, and free of any deceit or fraud practiced in said action by any of the parties thereto. The testimony of the respondent that she did not have sexual intercourse with any man other than the appellant from the date of their marriage to the time of their divorce was sufficient within itself to support the declaration made by the trial court, even though there may be an abundance of record evidence to the contrary. (*Pores* v. *Purity Milk Co.*, 135 Cal.App.2d 305, 307 [287 P.2d 169].)

Nor is there any merit in appellant's contention that respondent by joining issue on the question of the child's legitimacy, and offering evidence on the issue, thereby waived

her defense that the final decree in the Washington divorce action decreeing that the child in question was the issue of the marriage was res judicata. Respondent did not voluntarily raise this issue. Appellant was attacking the provision in the divorce decree on the ground of alleged misrepresentation made by respondent concerning the date the child was conceived (fraud) and he cannot object if respondent is also allowed to open up the previous case in her defense of and in support of the divorce decree. ■ The party intending to rely on a plea of res judicata must produce evidence of a former adjudication and in some cases evidence dehors the record may be required to establish the scope of the prior adjudication. *Domestic & Foreign Pet. Co., Ltd.* v. *Long,* 4 Cal.2d 547, 562-563 [51 P.2d 73], and *Estate of Landau,* 158 Cal.App.2d 176 [322 P.2d 222], cited by appellant, do not support his contention. The cases hold that where there is no pleading or proof nor reliance on a former judgment the defense of res judicata is waived.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1959.