[Civ. No. 24562.   Second Dist., Div. Three.   Dec. 30, 1960.]

MILDRED L. CRAIN, Appellant, v. JACK AARON CRAIN, Respondent.

Marvin Eugene Tincher for Appellant.

Brown & Grisham and Jack E. Grisham for Respondent.

FORD, J.—This is an appeal from an order modifying the provisions of a judgment of divorce with respect to the matter of support for the plaintiff and for the minor child of the parties.[1]

---

[1] In the notice of appeal, it is also stated that the appeal is from "the judgment denying motion for new trial" with respect to the matter of the application for modification. That portion of the appeal must be dismissed inasmuch as no appealable order is involved. (See *Estate of Dopkins,* 34 Cal.2d 568, 569 [212 P.2d 886].)

On January 10, 1957, an interlocutory judgment of divorce was entered. Therein the defendant was ordered to pay to the plaintiff the sum of $25 per week "as and for alimony" and the sum of $40 per week for the support of the child of the parties "until further order of the Court." The custody of the child was awarded to the mother. The judgment contained the following paragraph: "This order is based upon the understanding of the parties and of the Court that defendant's monthly take-home pay is approximately $525.00 per month.[2] It has been stipulated and it is hereby ordered that this order may be reopened at any time by either party upon a showing of a change in the earnings of the defendant or upon a showing by the plaintiff of a substantial change in financial needs for herself or for the minor child of the parties."[3] Such provisions were consistent with a written stipulation of the parties which was filed on March 9, 1956. The provisions of the interlocutory judgment, to which reference has been made, were incorporated in the final judgment of divorce. The latter judgment was entered on August 22, 1958.

Prior to the application for modification upon which the order herein attacked was based, the defendant had unsuccessfully sought to obtain such a modification. The earlier proceeding was instituted on January 5, 1959. In his affidavit in support of his application, the defendant stated in part as follows: ". . . the plaintiff has made no effort to re-adjust herself or to secure employment. The minor child is now 7 years of age and attends school regularly and defendant feels plaintiff could work at least while child is in school. Defendant has re-married and his wife is expecting a child. Defendant's earnings are only slightly above his earnings when the order was made." Modification was denied on January 23, 1959.[4] The defendant was ordered to pay an attorney's fee of $150 for the plaintiff forthwith.

Thereafter, on July 22, 1959, the defendant obtained an

[2]The parties agree that the figure should have been $625 rather than $525, the latter figure having been inserted in the judgment by mistake as is evident from the written stipulation of the parties which was filed on March 9, 1956.

[3]No point has been made on this appeal that the sentence last quoted limited in any way the power of the court below with respect to the modification herein involved.

[4]In the plaintiff's notice to the defendant with respect to the order of the court, it was stated that "the Court did find that the circumstances of both plaintiff and defendant had changed since the entry of the Interlocutory Decree, but denied any modification. . . ."

order requiring the plaintiff to show cause why there should not be a modification of the judgment as to the matters of support for the plaintiff and for the child. That matter was heard on September 4, 1959. The court made written findings of fact with respect to the subject of change of circumstances since the granting of the interlocutory judgment or since January 23, 1959, as follows: 1. At the time of the entry of the interlocutory judgment the plaintiff was not employed, but at the time of the hearing she was employed and was receiving "approximately $52.37 take home pay each week." 2. The defendant remarried on September 5, 1958, and a child of that marriage was born on July 2, 1959. 3. At the time of the hearing, the defendant's "take home pay" was approximately $642 per month. 4. The "necessary living costs of the defendant have materially increased and materially changed." The court granted a modification of the obligations of the defendant under the judgment as follows: 1. The defendant was ordered to pay to the plaintiff for her support the sum of $1.00 per month until further order of the court. 2. The defendant was ordered to pay to the plaintiff for the support of the child the sum of $30 per week until further order of the court. 3. The defendant was ordered to pay additional fees for plaintiff's attorney in the amount of $150, payable in installments of $10 per week.

The plaintiff, as appellant herein, attacks the order primarily on the ground of the insufficiency of the evidence to justify the modification, particularly since the court had denied the previous application for modification. It is, therefore, necessary to summarize the evidence which was before the court. Both counsel agreed that, at the hearing in January of 1959, in denying the application for modification the judge stated that he believed the motion to be premature. At the hearing on September 4, 1959, it was the position of counsel for the plaintiff that, if the facts had not changed since the January hearing, the order of January 23, 1959, was res judicata. In response thereto, the judge presiding on September 4, 1959, stated that "the dates that control in this action are the dates of the judgment, January of 1957, and this date, September 4th, 1959."

The affidavit of each party was received in evidence, on September 4, 1959, subject to the cross-examination of such party. That of the defendant showed an income of $642 a month and living expenses of $460 per month. His payments to creditors were in the total amount of $391 and were itemized

as follows: 1. $36 per month on a second trust-deed, the unpaid balance being $3,600. 2. $10 per month on a medical bill, the unpaid balance being $200. 3. $10 per month to the plaintiff's attorney, the unpaid balance being $90. 4. $10 per month to his own attorney, the unpaid balance being $200. 5. $325 for alimony and child support. He had $40 in the bank. On cross-examination, the defendant testified that he had remarried on September 5, 1958. His present wife was not employed because their child was only 2 months old, but she was otherwise able to work. Before her marriage she made about $70 to $75 a week. She last worked in April of 1959. They lived in a three-bedroom house which his wife owned, but on which the payments were $112 a month. His wife would contribute again to such payments when she returned to work after the period of nursing the baby had terminated. His lunches cost about $40 a month and the cost of other food for himself and for his family was about $80 a month. Since the arrival of the child, the cost was "a little bit more" than in January; the cost of supplementary food was probably twenty or thirty cents a day. In addition, the cost of living had "gone up a little" since January. He had received an increase in salary of $30 a month since January. Because of a need for more bedroom space, the cost of housing had increased from $100 to $112 a month since January. While the cost of shoes and clothing remained as it was in January, it was greater than it was at the time of the inter-locutory judgment because he was currently doing office work whereas he formerly did manual labor; the difference was probably $15 to $20 a month. At the time of the interlocutory judgment, his rent was $65 per month. With respect to medical expense, the pediatrician for the baby cost about $10 a month. But in January 1959, he had an obligation for pre-natal care which was probably about the same in amount as his current expense. Because of the type of clothing he currently used, his cleaning expenses were greater than in 1957. Since January 1959, the cost of utilities had increased in that he currently paid the water bill of $3.75 a month; moreover, the other utilities were probably $5.00 a month more than when he was living in an apartment in January 1959. After January 1959, he incurred the obligation secured by the second trust deed; it was partially for money for the house and partially for money used to pay some of his debts. But the total amount of his monthly payments on obligations was about the same as it was in January 1959. However, in 1957

he did not "owe anybody." He had not regularly made payments of $10 per month to the plaintiff's attorney; the same was true with respect to his payments to his own attorney. The $10 per month for medical expense was paid to a physician "most of the time" and the amount was the same in January 1959.

The affidavit of the plaintiff set forth her living expenses in the total amount of $418. She also listed "as payments to creditors" the sum of $50 per month for "auto," $50 per month for furniture, and $65 per month for "Country Day School." She stated that her "take home" wages were $225.19 per month. In her own behalf she testified that her current weekly "take-home pay" was $52.37. In January 1959, she was employed by a school district and received approximately $3.00 more per week. She commenced working for the school district the preceding December 15. She had been employed by her current employer for about five or six weeks. Since January 1959, she had had three jobs; she was "laid off" one job and another one was temporary. On cross-examination, she said that the job she obtained in December 1958, was the first one she had had since 1941. Her current work was not temporary work. The $50 listed on her affidavit with respect to an automobile was not a monthly payment but rather a monthly savings toward another automobile. The $65 payment for a private school was to cease that day but thereafter she would have to pay for the care of the child for two hours a day for five days of the week at the rate of 50 cents an hour. In addition, she testified that "because there are seventeen weeks in a year that the child is not in school it averages out to $20 per month over a yearly period for her summer care." The child was almost 8 years old. On redirect examination, she testified that her current automobile was a " '49 Dodge with about ninety thousand miles on it." It was necessary that she have a car to carry her to her place of employment. Her expenses were approximately the same as they were in January 1959, except that she had to travel a greater distance to her place of employment. But her expenses were greater than they were at the time of the interlocutory judgment because she currently needed more clothes and had "this task of paying out the $50 a month" for the child's care. Upon inquiry by the court, she testified that the item of $50 per month for furniture was not an actual obligation but that she tried "to plan wisely." Her savings were currently in the approximate amount of $2,500

which was the money she received by way of property settlement at the time of the interlocutory judgment.

In *Bratnober* v. *Bratnober*, 48 Cal.2d 259, the Supreme Court stated, at page 261 [309 P.2d 441]: "Since it 'would be incongruous to allow an appealable order to become final and yet to concede the power of a court at a later date, upon the same state of facts, to issue an order nullifying it' (*Snyder* v. *Snyder*, 219 Cal. 80, 81 [25 P.2d 403]), it is generally held that the 'trial court is without authority to make an order reducing the amount of alimony [or support payments] awarded in an interlocutory [or final] decree of divorce in the absence of a showing that there has been a change in conditions subsequent to the entry of [such] decree.' (*Ralphs* v. *Ralphs*, 86 Cal.App.2d 324, 325 [194 P.2d 592].)"

It is, of course, necessary to ascertain what issue or issues have been determined in a prior proceeding in a case of this nature where an application for modification is subsequently presented to the court. As said in *Smith* v. *Heilman*, 171 Cal.App.2d 424, at 430 [340 P.2d 752]: "The party intending to rely on a plea of res judicata must produce evidence of a former adjudication and in some cases evidence dehors the record may be required to establish the scope of the prior adjudication." Parol evidence or a reporter's transcript of the prior proceeding may be the source of such evidence where resort thereto is necessary. (See *Hall* v. *Coyle*, 38 Cal.2d 543, 546 [241 P.2d 236]; *United Bank & Trust Co.* v. *Hunt*, 1 Cal.2d 340, 346-347 [34 P.2d 1001].) In the absence of such a showing, there may be no basis for reaching a conclusion as to whether the matters upon which the court passed at the prior hearing coincided with those presented in the subsequent proceeding. (*Storrs* v. *Storrs*, 47 Cal.App.2d 108, 110-111 [117 P.2d 381].) As clearly expressed in the Storrs case, at pages 110-111: "Appellant, in presenting to us his claim of *res judicata*, relies exclusively on the fact that the grounds stated in each of the affidavits upon which each of the orders to show cause issued are the same, or under the facts should by us be deemed to be the same. With that point conceded, if it be, he urges that on the authority of *Snyder* v. *Snyder*, 219 Cal. 80 [25 P.2d 403], there must be a reversal. The contention is without merit. In the Snyder case the supporting affidavits on which each of the orders to show cause had issued were identical. There, as here, the trial court had denied a modification on the first hearing but granted it on the second upon the affidavit

alone, without a shred of testimony. This was equivalent to a readjudication upon the earlier evidence after the court had lost jurisdiction by a discharge of the first order to show cause. But in the case at bar testimony was taken at both hearings. We have no way of knowing, any more than had the trial judge, whether the testimony on the first hearing was the same as at the hearing before him. That it was the same, in part, is indicated by the admissions made by respondent in her cross-examination, but we are not prepared to say that this fragment necessarily encompasses the whole of the testimony on the point of the change in condition of the parties or the needs of the children. It is not upon the supporting affidavits alone but upon the testimony as well that we must look in each instance for the true picture. The affidavits in a case such as this do not serve, as pleadings sometimes do, in determining questions of *res judicata.* If this were not so then an adverse adjudication on a claim that 'the children need additional support' would forever bar a similar claim in the future." (See also *Leupe* v. *Leupe,* 21 Cal.2d 145, 151-152 [130 P.2d 697] ; *Becker* v. *Becker,* 64 Cal.App.2d 239, 241-242 [148 P.2d 381].)

In the present case, the trial court did not have before it a transcript of the proceedings which occurred on January 23, 1959. No written findings of facts were made with respect to the matter then heard. In the minutes of the court it was stated: "Modification for child support denied." However, at the hearing on September 4, 1959, which resulted in the order which is the subject of the present appeal, counsel for both parties agreed that after the evidence had been received in the prior proceeding the judge stated that he believed that the motion was premature. For the purpose of determining the nature of the adjudication then made on January 23, 1959, resort to that statement of the court was proper as is shown by the reasoning of Mr. Justice Fox in *Tevis* v. *Beigel,* 156 Cal.App.2d 8, wherein it was said at pages 14-15 [319 P.2d 98] : "It is clear from the above statement that evidence *other than* the record itself may be considered in order to determine what questions were actually decided by the court. It appears to us that there is no better extrinsic evidence on this issue than the oral opinion of the judge who has himself decided the case. Therefore, the trial court in the instant case erred when he refused to admit in evidence the certified copy of the oral opinion of the court in the prior action between the parties. That opinion clearly disclosed that the basis for

the nonsuit in the prior case was the court's decision that the failure to comply with section 820 of the Corporations Code rendered the contract invalid." Similar reasoning is found in *Dahlin* v. *Moon*, 141 Cal.App.2d 1, at pages 3-4 [296 P.2d 344], wherein the oral statement of the trial court formed the basis of the determination that a second motion was proper inasmuch as the prior denial "was intended to be on technical defects only, with opportunity to renew the motion so as to correct said defects."

A court may, of course, refuse to grant a modification even if circumstances have changed, if it concludes that the factual situation has not reached that stage of permanency which warrants recognition by order of the court. (See note, 18. A.L.R.2d 10, 21.) As indicated in *Johnson* v. *Johnson*, 104 Cal.App. 283, at page 286 [285 P. 902], while the fact that a person moves promptly in bringing to the attention of the court the occurrence of a change of facts does not deprive the trial court of the right to entertain and decide the motion for modification, still the matter of whether such application is premature is to be weighed and considered in deciding the controversy. In the present case, the determination of the court upon the prior application that the defendant had moved prematurely, even if error, became final and was binding on the parties. (See *Tevis* v. *Beigel, supra,* 156 Cal.App.2d 8, 15.) It is clear, therefore, that in view of the basis of the prior determination any misconception of the trial court in the subsequent proceeding with respect to the doctrine of res judicata resulted in no prejudice to the plaintiff.

Since the doctrine of res judicata did not preclude the trial court from determining whether there had been a material change of circumstances since the entry of the interlocutory judgment, we turn to the sufficiency of the evidence to sustain the finding that there had been such a change. Clearly, justification for such conclusion is found in the facts that the plaintiff had been gainfully employed since December 1958, and the defendant had remarried and a child had been born of the new union. It is true that the remarriage would not, in and of itself, be a justification for reducing the former wife's alimony if her needs demanded its continuance at the same amount as in the past; but under the circumstances of the present case it cannot be said that the trial court was not warranted in considering it. (See *Reed* v. *Reed,* 128 Cal.App. 2d 786, 792 [276 P.2d 36].)

Since the evidence sustained the conclusion that

there had been the requisite change of circumstances, the scope of the modification of the provisions for support which should properly be made in harmony with such change was a matter which rested in the discretion of the trial court; in the absence of a clear showing of abuse of that discretion, an appellate court is not free to interfere with the order of the trial court. (See *Leupe* v. *Leupe, supra,* 21 Cal.2d 145, 153; *Evans* v. *Evans,* 173 Cal.App.2d 714, 716 [343 P.2d 997]; *Moore* v. *Moore,* 133 Cal.App.2d 56, 58-59 [283 P.2d 338].) This is not to say that we do not recognize the delicacy of the situation presented to the trial court in a case of this kind. As this court said in *McKee* v. *McKee,* 108 Cal.App.2d 488, at page 490 [239 P.2d 37] : ''Adjustments of support money in such circumstances as meet the parties before us is one of the most difficult and baffling problems which confront a trial judge. But it is his problem. Time and again it has been emphasized that a reviewing court does not have the discretion in such matters that is vested in the trial judge.'' In the present case we cannot say that there was an abuse of discretion on the part of the trial judge.

The attempted appeal from ''the judgment denying motion for new trial'' is dismissed. The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.