TOBRINER, J.
 

 Appellant husband urges termination of a support provision in a 1939 court-approved property settlement agreement, which the parties modified in 1953 and the court thereafter incorporated as part of the original decree. Since the husband later became indebted in a sizable sum for failure to pay such support moneys and thus incurred liability for an accrued indebtedness, and since the parties can-celled that indebtedness as consideration for a 1953 integrated agreement containing a support provision, the trial court properly concluded that it was not empowered to terminate that support provision. This, indeed, is the crux of the matter, and appellant’s argument that the support provisions of the 1939 agreement are separable, not integrated with the property settlement, and that in any event the court improperly admitted it into evidence, does not invalidate the trial court’s conclusion.
 

 Since the case involves the provisions of the two agreements and the corresponding decrees, we set them out briefly.
 

 After some 10 years of marriage, the husband and wife entered into a property settlement agreement which mutually released the parties from claims for support and maintenance, stated that the parties intended “to settle . . . their respective property rights,” provided the after-acquired property be the separate property of the acquiring spouse, and mutually waived the right of the surviving spouse to the estate of the other. It granted to the wife the household furniture and all other tangible property of the parties, excepting the “business of the husband,” the “office furniture, accounts receivable” and a Plymouth automobile, which were given the hus
 
 *667
 
 band. The agreement provided that the husband pay the wife the sum of $50 a month for a period of five months, and after January 1, 1940, $150 a month, for the support and maintenance of the two minor children. It provided that the husband pay the wife the sum of $50 a month for her own support.
 

 The interlocutory decree of August, 1939, “approved and confirmed,” the property settlement agreement, awarded the support payments to the children and wife in accordance with the agreement but made no disposition of the property as such.
 

 When the husband incurred substantial delinquencies in these payments, the parties worked out a new agreement. The second agreement recited that the wife claimed $14,872.50 to be due and that the husband contended $11,670 to be owed. In consideration of the cancellation of these delinquent “alimony and child support” payments, the parties agreed that they would stipulate “that the court may enter ... its order modifying the terms of said interlocutory decree” to accord with the agreement and to provide
 
 “nunc pro tunc”
 
 that the modified terms “be deemed included in said final decree of divorce.” The agreement provided that the husband “continue to pay plaintiff as and for her support and maintenance the sum of Fifty Dollars . . . per month . . . unless plaintiff remarries. ...” The husband also agreed to assign to his wife and to maintain a $10,000 life insurance policy with a private company, and to retain the parties’ children as beneficiaries of that policy; he stipulated that he would pay the premiums on the National Service Life Insurance policy and treat it as “absolutely assigned to plaintiff” with the parties’ children as beneficiaries. Finally, the agreement provided the husband “cash in forthwith” $650 of Government Bonds, and deliver the proceeds to the wife to defray the school expenses of the children.
 

 Upon the wife’s motion that the interlocutory and final divorce decrees be modified in accordance with this agreement, the trial judge on September 3, 1953, ordered that “the said agreement of July 13, 1953, be and it is hereby made a part of the said decrees and incorporated into said decrees by reference as if therein fully set forth. ’ ’
 

 Five years later, on January 31, 1958, the husband sought to modify the divorce decrees by terminating “all alimony from defendant to plaintiff and . . . payment by defendant of any and all premiums on life insurance on the ground that the physical and financial condition of defendant has changed
 
 *668
 
 for the worse since said decrees were made and since they were modified, and that the financial condition of the plaintiff has improved....”
 

 At the hearing on the motion all of the above evidence, except the initial agreement of August, 1939, came before the court. At the close of the hearing the trial judge called for memoranda from the parties. The wife attached to her memorandum a copy of the original agreement.
 

 Denying the husband’s motion for modification, the trial court found the support provisions of the property settlement agreement of August 12, 1939, to be “integrated with the other provisions of the property settlement agreement,” and the support provisions of the agreement of July 13, 1953, to be “integrated with the other provisions of said agreement and with the provisions of the property settlement agreement of •August 12, 1939.” The court concluded that it had no power to modify the support provisions of the interlocutory and final decrees of divorce as modified by the court’s order of September 3,1953.
 

 The husband filed his notice of appeal on June 25, 1958. The wife, on August 7, 1958, requested a correction of the clerk’s transcript to include the 1939 agreement as well as the questionnaire on motion to modify defendant’s affidavit for final judgment of divorce. And on December 1, 1958, at the hearing for consideration of such correction, the wife explained that when she found “the agreement was not in the Court file” she attached a duplicate original to the memorandum and offered to supply the husband with a photostatic copy if he did not “have his original duplicate.” The wife contended, “. . . I invited him to object at that time”; the court stated to the husband: ‘‘That was the time you should have objected.” Thereupon, the court admitted into evidence the original agreement and the two other items.
 

 As we have said, we have concluded that the court was powerless to terminate the support provisions under the 1953 agreement. The amount due to the respondent wife constituted at that time a fixed figure which was not subject to modification by the court; since the provision for support in the 1953 agreement became part of an integrated agreement, the court did not acquire at this point a resurrected power to modify that provision for support.
 

 A court may modify the terms of a property settlement agreement which has been incorporated into a divorce
 
 *669
 
 decree if it finds the provisions of the agreement as to the disposition of the property and as to alimony to be severable. (16 Cal.Jur.2d 510.) The obligations which arise between husband and wife are by no means merely consensual; the California courts have long recognized the “concept of marriage as a legal institution” (1 Armstrong, California Family Law, p. 2.) which is reflected in the California Civil Code, section 55; “ [t]he contract is a portal through which the parties enter into the
 
 relation
 
 of marriage ...”
 
 (Sharon
 
 v.
 
 Sharon
 
 (1888), 75 Cal. 1, 9 [16 P. 345]; emphasis added.) “The relation once formed, the law steps in and holds the parties to various obligations and liabilities.”
 
 (Maynard
 
 v.
 
 Hill
 
 (1887), 125 U.S. 190, 211 [8 S.Ct. 723, 31 L.Ed 654].) Since the law fixes the extent of the obligation of support, that power of the court continues even if the parties themselves have agreed upon the amount of alimony and included it, among other and separable provisions, in a property agreement.
 
 (Hough
 
 v.
 
 Hough,
 
 26 Cal.2d 605 [160 P.2d 15] ;
 
 Adams
 
 v.
 
 Adams,
 
 29 Cal.2d 621 [177 P.2d 265].)
 

 On the other hand, the court has no power to change the terms of a property settlement agreement that relates only to the division of the property. (16 Cal.Jur.2d 510-511.) Hence if in the agreement the provision for support is exchanged for a share of the community property, the agreement constituting an integrated all-embracing bargain, the court cannot modify its terms. To do so would be to use the parties’ discarded support provision to reach the area of property disposition, an area into which the courts would not otherwise venture.
 

 Thus the courts have been concerned with whether the agreement is in reality a settlement of property rights which includes as an integral part a support provision, or is nothing more than a separable support provision contained within the agreement. Only in the latter instance do the courts, in the exercise of their long recognized authority and responsibility arising from the relationship of the parties, retain the power to determine the support, and to modify, if necessary, the settled amount.
 

 In the instant ease, since the 1953 agreement of the parties constituted, in the first place, a pure property settlement agreement, liquidating a fixed indebtedness which was a property asset of the wife and providing in its place a support provision, and since, in the second instance, the parties in
 
 *670
 
 tended the 1953 agreement to constitute an integrated property settlement, the court could not modify the support provision.
 

 That the court lacked the power to modify the support provision of the 1953 agreement becomes apparent upon the analysis of the cancelled obligation. The court could not modify the accrued support payments owed by the husband; indeed, it was the wife’s relinquishment of that amount upon which the 1953 agreement rests. The decisions have uniformly held that the courts may not modify accrued and unpaid alimony and child support payments.
 
 (Keck
 
 v.
 
 Keck
 
 (1933), 219 Cal. 316, 320-321 [26 P.2d 300] (alimony);
 
 Scarlett
 
 v.
 
 Scarlett
 
 (1957), 151 Cal.App.2d 237, 239 [311 P.2d 188] (child support);
 
 Zaragoza
 
 v.
 
 Zaragoza
 
 (1941), 48 Cal.App.2d 27, 28 [119 P.2d 162] (alimony);
 
 Dreesen
 
 v.
 
 Dreesen
 
 (1939), 31 Cal.App.2d 479, 481 [88 P.2d 223] (alimony).) The decisions likewise declare that a former wife’s release of an obligation for arrearages, if supported by adequate consideration, binds her.
 
 (Smith
 
 v.
 
 Smith
 
 (1941), 42 Cal.App.2d 652 [109 P.2d 739].) The wife may agree to relieve the husband of past amounts due for child support
 
 (Cervantes
 
 v.
 
 Cervantes
 
 (1947, Mo.App.), 203 S.W.2d 143, 146), although a release by the children, relieving the father of such payments, does not obligate the wife
 
 (Saunders
 
 v.
 
 Simms
 
 (1920), 183 Cal. 167 [190 P. 806]). The amounts due in the instant ease were, then, not subject to further modification by the courts; their relinquishment by the wife, however, could, and did, provide the consideration for the 1953 settlement agreement.
 

 The rationale for the modification of a support provision, separable from the property settlement agreement, lies, as we have said, in the court’s power to determine such support. If the court has
 
 no power
 
 to alter, change or determine the wife’s support, the agreement cannot be modified. Here the court had no such power. The agreement did not deal with an original matter of support, as to which the court is concerned and over which it exercises power, but with an indebtedness as to which it has no concern and over which it exercises no power. Whatever the exact amount due under the 1939 agreement, the debt had become due and payable. The property agreement cancelled that amount, and, in consideration, the agreement established its own provision for support. The contract did not revive the court’s power to provide support; the agreement supplied its own method of payment, stipulated the time to do so and fixed the amounts of the monthly installments.
 

 
 *671
 
 The situation here, then, may be assimilated to those eases in which the parties include a support provision in a property settlement agreement although the court itself lacks the power to render, or to control, an order of support. Thus in
 
 Johnson
 
 v.
 
 Johnson
 
 (1930), 104 Cal.App. 283 [285 P. 902], the court granted the husband a divorce, but presumably, pursuant to an agreement between the parties, the court ordered the payment of permanent alimony to the wife. Subsequently the husband sought a modification of this support order, and the trial court granted
 
 it;
 
 on appeal the Fourth District Court of Appeal, in reversing the modification order, stated: “In this case the decree of divorce was given to the innocent husband and he was directed to pay $100 per month to his erring wife. There is no authority of law for such an order (§§ 136, 139, Civ. Code), and if supported at all it must find its strength in a contract between the husband and wife settling their property rights.” (P. 287.) “We conclude that if the award of $100 per month was based upon the contract as part of the settlement of the property rights of the parties, the court had no authority to modify it.” (P. 289.)
 

 The Third District Court of Appeal in
 
 Wylie
 
 v.
 
 Wylie
 
 (1938), 26 Cal.App.2d 167 [79 P.2d 152], recognizing the validity of the Johnson ruling, stated: “It is true that where an innocent husband is awarded a decree of divorce which approves and adopts a previous written agreement settling property rights between them, and specifically providing for unconditional payments of alimony for the support of the wife, the court is without jurisdiction or authority to subsequently modify or annul the award contrary to the terms of the contract.
 
 (Johnson
 
 v.
 
 Johnson,
 
 104 Cal.App. 283 [285 P. 902].) . . . .” (P. 171.)
 

 The corollary of the proposition finds recognition in
 
 Hough
 
 v.
 
 Hough, supra
 
 (1945), 26 Cal.2d 605, 612, in which the Supreme Court stated: “ [T]he incorporation of an agreement in the decree for the payment of support
 
 as long as it is not a property settlement agreement
 
 does not prevent a modification of the decree under appropriate circumstances. (See . . .
 
 Johnson
 
 v.
 
 Johnson,
 
 104 Cal.App. 283 [285 P. 902] ”; italics added.) Since the instant agreement constituted a property settlement agreement, incorporated in the decree by a
 
 nunc pro tunc
 
 order, the court was powerless to render a subsequent modification of the agreement.
 
 (Ettlinger
 
 v.
 
 Ettlinger
 
 (1935),
 
 *672
 
 3 Cal.2d 172 [44 P.2d 540];
 
 Moran
 
 v.
 
 Moran
 
 (1935), 3 Cal.2d 342 [44 P.2d 546].)
 

 In the second instance the parties intended the 1953 agreement to constitute an integrated property settlement. Nothing in the agreement indicates an intent of the parties to segregate the support provisions from the disposition of the properties distributed in it. Because of the recited impecuniousness of the husband, the wife accepts the proceeds of $650 in Government Bonds, the husband’s obligation to meet the premiums for two insurance policies and the agreement to pay the support provision of $50 per month. The contract incorporates an integrated, all-embracing bargain.
 

 To hold that the wife intended that the support provision be segregated we must conclude that she relinquished the substantial debt accrued under the 1939 settlement for a mere acknowledgment of a support provision to which she was in any event entitled under the prior decree. We cannot believe that the wife would exchange the sure-obligation of the debt for the uncertain support provision subject to court modification or termination. To sever the support provision from the property disposition of the 1953 agreement would be to mutilate the intent of the parties.
 

 Our conclusion that the 1953 agreement determines the case makes it unnecessary to decide the husband’s contentions that the 1939 agreement should not have been considered by the court because it was not properly introduced into evidence, and his further argument that, in any event, its provisions for support were severable and subject to modification. The admission of the 1939 agreement was thus not prejudicial. The issue as to its integration was not material.
 

 We conclude that the court was not empowered to modify the support provision of the integrated 1953 agreement.
 

 We affirm the order.
 

 Bray, P. J., and Duniway, J., concurred.