[L.A. No. 27143. In Bank. Feb. 16, 1965.]

IRMGARD DAWSON LEVITT, Plaintiff and Appellant, v. GENE LEVITT, Defendant and Respondent.

478

Don Lake and Val Linton for Plaintiff and Appellant.

Zagon, Aaron & Schiff, Harold E. Aaron and Gunther H. Schiff for Defendant and Respondent.

PEEK, J.—Plaintiff Irmgard Dawson Levitt appeals from that portion of an order which reduces from $500 per month to a token amount the allowance for her support by defendant husband Gene Levitt awarded by a previous decree of divorce. Since we conclude that the provisions for support of plaintiff Irmgard were severable from an agreement signed by the parties respecting the division of property and other marital rights, and since the parties may not by stipulation deprive the court of jurisdiction to modify alimony payments provided for by judicial decree, we affirm the trial court's order.

Irmgard and Gene were married in June 1949 and separated in July 1954. One child, Christopher, was born to the parties during their marriage. James Francis Levitt, Irmgard's child by a prior marriage, also resided with them.

A complaint for divorce was filed by Irmgard in December 1954. The following month Irmgard and Gene signed a property settlement agreement, which at one point recited that "The parties desire to settle their respective property rights and interests as of the date of this agreement and to arrange by agreement for the making of periodical payments by Husband to Wife in discharge of his legal obligation to support and maintain Wife because of their marital and family relationship. . . ." The parties also stated therein that "each does hereby declare that the consideration for the execution of this agreement is such resolution between themselves as to the disposition of their property rights and interests and the settlement of support and maintenance rights of one to the other. . . ."

In a separate article the agreement provided for payments by Gene to Irmgard and the children. The contracting parties expressly stated in that portion of the agreement that "Husband and Wife, *in discharge of Husband's obligation to support and maintain Wife because of their marital and family relationship,* hereby agree that Husband, *by way of alimony and not as a part of a property settlement* shall pay to Wife

for *alimony, support, and maintenance* so long as Husband is alive and so long as Wife is living and remains unmarried, . . .'' $400 per month ''for the support and maintenance of Wife,'' and $225 per month ''for the support and maintenance of each of the minor children,'' Christopher and James. (Italics added.)

An interlocutory judgment of divorce was entered in February 1955, which incorporated to the extent not inconsistent with the decree the provisions of the property settlement agreement and ordered compliance with the terms of that agreement. Final judgment of divorce was entered March 1956.

In November 1956 the parties stipulated that the final decree be modified so that $500 was payable by defendant each month ''for the support and maintenance of Plaintiff,'' and $250 was payable each month for Christopher's support. All of defendant's financial obligations to James were terminated. The stipulation for modification further recited: ''It is understood and agreed that Defendant reserves any rights he may presently have or may obtain in the future to seek further modification in the Property Settlement Agreement, Interlocutory Decree and Final Decree hereunder, *but Defendant covenants and agrees not to seek any modification or make any collateral attack concerning alimony or child support except in the event of a substantial decrease from Defendant's 1956 income.*'' (Italics added.) The final judgment of divorce entered March 1956 was ordered modified to incorporate those portions of the stipulation for modification pertaining to alimony, child custody, and child support. The parties concede that the above portions of the stipulation were merged in the final judgment. (See *Flynn* v. *Flynn,* 42 Cal.2d 55, 58-59 [265 P.2d 865].)

In May 1962 defendant Gene sought modification of the prior orders, including the cessation of his payments to Irmgard or their reduction to a nominal amount. He stated in a certified declaration that he had remarried and had one child by his present wife, in addition to the care of Christopher for a substantial portion of the year. He also alleged that to his best information Irmgard, who was born in Germany and was a naturalized United States citizen, had established residence in Germany and had resided in the United States for only 28 months of the previous seven years. Gene further stated that he was at present a free-lance television writer and had no other employment, although it was admitted that up to the present his yearly income had not fallen below his income in 1956.

Defendant declared that he had not defaulted in his payments to Irmgard, having paid over $40,000 for her support and maintenance in the previous seven years. He stated that "Plaintiff is able-bodied and capable of being self-supporting and the continuance of support and maintenance by defendant places an undue burden on defendant and puts a premium on plaintiff's remaining unmarried." It further appears, from a settled narrative statement on appeal (Cal. Rules of Court, rule (7)), that at the time of hearing Irmgard was not employed. Ten years previously she worked as a motion picture extra. Her sole source of income was defendant's alimony payments, and she leased a house in Germany relying upon the continuation of those payments. The settled statement also recited that defendant resided with his present wife and their child, along with two of his wife's children by a prior marriage.

The order now challenged by plaintiff was entered in June 1962. It provides that defendant continue his payments of $500 per month to Irmgard only until January 1, 1963, whereupon alimony payments are reduced to $1.00 per year "to continue until further order of the Court." Defendant was awarded custody of Christopher for the nine-month school year, plaintiff to have custody during the three-month school vacation period. Under the present order defendant must pay to plaintiff the support and maintenance for Christopher only during the three-month period the boy resides with his mother.

Appellant urges that the support and maintenance provisions are part of an integrated property settlement agreement and cannot be modified without consent of the parties except in the event defendant's income falls below the level attained in 1956, thereby satisfying the condition specified in the stipulation of November of that year (see *Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 60-61). Several portions of the agreement are cited in an attempt to uphold it as an integrated bargain, including the portion quoted above wherein the parties stated that the consideration for the execution of the agreement was the resolution of property claims and the settlement of rights to support and maintenance.

However, regardless of the latter general statement of intent and other indicia of an integrated agreement, the parties clearly expressed their specific intention that the support and maintenance to be provided Irmgard was "by way of alimony and not as a part of a property settlement." In the face of that declaration it must be held that the support

provisions were in the nature of alimony and severable from the division of property rights. (*Kelley* v. *Kelley,* 151 Cal. App.2d 228, 233-235 [311 P.2d 90].) Hence the payments are subject to modification by the court upon a showing of changed circumstances. (See *DiMarco* v. *DiMarco,* 600 Cal. 2d 387, 392 [6] [33 Cal.Rptr. 610, 385 P.2d 2]; *Baker* v. *Baker,* 192 Cal.App.2d 730, 733 [13 Cal.Rptr. 772]; *Carson* v. *Carson,* 179 Cal.App.2d 665, 668-669 [4 Cal.Rptr. 38].)

Appellant next points to defendant husband's statement in the stipulation for modification of November 1956, where he agreed not to seek any modification in alimony "except in the event of a substantial decrease" from his 1956 income, an event which has not occurred. She urges that the court had no jurisdiction to modify that agreement unless the above condition was satisfied, citing *Flynn* v. *Flynn, supra,* 42 Cal. 2d 55, and *Campbell* v. *Campbell,* 178 Cal.App.2d 77 [2 Cal. Rptr. 710]. The *Flynn* and *Campbell* cases, however, are distinguishable in that the support provisions there involved were nonseverable parts of property settlement agreements (see 42 Cal.2d at 60-61; 178 Cal.App.2d at 80), so that the support provisions could be modified by the court only to the extent prescribed by the underlying integrated agreements.

The nonintegrated agreement before us provides for severable payments of support or alimony, and such payments are modifiable "subject to the discretion of the court as justice may require" (*Hough* v. *Hough,* 26 Cal.2d 605, 612 [160 P.2d 15]). It was further held in *Hough* that the provision of section 139 of the Civil Code authorizing the modification of support allowances becomes an implied part of any such agreement whenever, as herein, the agreement is merged in the decree. (Cf. *Hawkins* v. *McLaughlin,* 196 Cal.App.2d 318, 323-324 [16 Cal.Rptr. 572].) Thus in contracting concerning alimony payments when incorporation in the decree is contemplated the parties are presumed to be aware that the trial court has the power to modify or revoke such agreements in accordance with changed circumstances. (*Smith* v. *Smith,* 94 Cal.App. 35, 47 [270 P. 463].)

From the foregoing it is clear that the parties' stipulation that the alimony payments would not be modified unless defendant's income decreased below the level in 1956 did not preclude the court from ordering the present modification of its decree based on that stipulation. (*Plumer* v. *Plumer,* 48 Cal.2d 820, 824 [313 P.2d 549]; *Adams* v. *Adams,* 29 Cal. 2d 621, 624-625 [177 P.2d 265]; *Carson* v. *Carson, supra,*

179 Cal.App.2d 665, 668-669; *Kelley* v. *Kelley, supra,* 151 Cal.App.2d 228, 233, 235; *Wright* v. *Wright,* 148 Cal.App.2d 257, 266 [306 P.2d 536]; *Smith* v. *Superior Court,* 89 Cal.App. 177, 188-190 [264 P. 573]; see *Puckett* v. *Puckett,* 21 Cal.2d 833, 840 [136 P.2d 1]; Note 166 A.L.R. 675; 3 Witkin, Summary of Cal. Law, pp. 2666-2667; see also *Hoerner* v. *Superior Court,* 182 Cal.App.2d 500, 504 [6 Cal.Rptr. 178]; *Innes* v. *McColgan,* 47 Cal.App.2d 781, 786 [118 P.2d 855]; Note 166 A.L.R. 370; but see *Flynn* v. *Flynn,* 42 Cal.2d 55, 64-70 [265 P.2d 865] [dissenting opinion].)

Appellant argues in the alternative that even if the court had jurisdiction to order the instant modification of alimony payments, the order was an abuse of discretion because it plainly effected an injustice in depriving her of all support from her former husband. ▆ However, under all of the present circumstances we cannot say that the trial court abused its discretion in reducing to a token amount the support payments to Irmgard.

▆ The trial court has jurisdiction to modify orders for support where the conditions of the parties have changed subsequent to entry of the prior order. (*Bratnober* v. *Bratnober,* 48 Cal.2d 259, 261-262 [309 P.2d 441]; *Friedman* v. *Friedman,* 222 Cal.App.2d 217, 219 [35 Cal.Rptr. 111].) ▆ Each application for modification must be determined on its own facts, and the exercise of the trial court's discretion in this regard (see *McKee* v. *McKee,* 108 Cal.App.2d 488, 490 [239 P.2d 37] will not be disturbed unless abuse of that power is shown. (*Dean* v. *Dean,* 59 Cal.2d 655, 657 [31 Cal.Rptr. 64, 381 P.2d 944].) ▆ Also, the evidence presented must be considered in the light favorable to support rather than to defeat the order determining the application for modification. (*Werner* v. *Werner,* 120 Cal.App.2d 248, 251 [260 P.2d 961].)

▆ In opposing Gene's application on the grounds of injustice, Irmgard merely stated that the parties had made an earlier oral agreement whereby their child, Christopher, would until he attained the age of 12 years spend six months of each year in Germany with her and the remainder of the year in this country. She declared that in reliance on that arrangement which had continued for three years she had leased a house in Germany and purchased an automobile, household goods and appliances, "all of which cannot be sold or discontinued on such short notice without serious financial losses to the plaintiff." She did not controvert Gene's state-

ment that she is able to work and be self-supporting. We note that the trial court met her objection of short notice by ordering Gene to continue the alimony payments of $500 per month for an additional seven months, apparently to allow Irmgard to make adjustments in her financial commitments and to seek employment if necessary.

The court was entitled to consider as a changed circumstance Irmgard's apparent ability to produce her own income now that her child was older and would be under her care for only the three-month school vacation period. (See *Dean* v. *Dean, supra,* 59 Cal.2d 655, 658-659; *Lamborn* v. *Lamborn,* 80 Cal.App. 494, 498-499 [251 P. 943].) Christopher was born in February 1952, so he was less than five years old and could well have required Irmgard's constant care at the time the final judgment of divorce was modified in November 1956 to provide for alimony payments to her of $500 each month. But the boy was nearly 11 years old and presumably more self-sufficient when Irmgard's payments were reduced to a token amount. Her earning potential was thus increased during summer months as well as for the balance of the year. (See *Evans* v. *Evans,* 173 Cal.App.2d 714, 716-717 [343 P.2d 997]; cf. *Clark* v. *Clark,* 193 Cal.App.2d 565, 566 [14 Cal.Rptr. 419]; compare *Fine* v. *Fine,* 76 Cal.App.2d 490, 495-496 [173 P.2d 355].)

Although Gene's increased family obligations would not, alone, have justified modification if Irmgard's situation had not changed (*Crain* v. *Crain,* 187 Cal.App.2d 825, 833 [9 Cal.Rptr. 850]) it was a factor which the court could also consider. (*Werner* v. *Werner, supra,* 120 Cal.App.2d 248, 252.) Finally, by the terms of its order reducing alimony payments the court retained jurisdiction to order Gene to increase his payments to Irmgard in the event that in the future she is unable to earn her own livelihood, or requires additional funds for any other valid purpose. (See *Schraier* v. *Schraier,* 163 Cal.App.2d 587, 589-590 [329 P.2d 544]; *Kroupa* v. *Kroupa,* 91 Cal.App.2d 647, 650 [205 P.2d 683]; *Gebhardt* v. *Gebhardt,* 69 Cal.App.2d 723, 727-728 [160 P.2d 177].)

The order modifying the final judgment of divorce is affirmed.

Traynor, C. J., McComb, J., Mosk, J., and Schauer, J.*, concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

PETERS, J.—I dissent.

I agree that the alimony provision is severable from the property settlement agreement and, therefore, subject to modification, and I also agree that the parties by stipulation could not deprive the trial court of its jurisdiction to modify the alimony provisions. But, nevertheless, it is my view that the trial court abused its discretion in making the challenged modification.

The power to modify is dependent, of course, upon a showing of change of circumstances. In other words, without a real change in the circumstances as to one or both of the parties the court is without jurisdiction to modify (see discussion and cases cited 16 Cal.Jur.2d § 215, p. 505).

Here, as the majority opinion shows on its face, the condition of the wife, so far as her need for support is concerned, has not become less than it was in 1956 when she was awarded the $500 monthly. The husband averred that in 1962, when the challenged modification was made, his former wife was "able-bodied and capable of being self-supporting." So she was in 1956. There is no showing of a change of circumstance here. At the time of hearing in 1962 the former wife was unemployed, but in 1952 she was employed as a movie extra. Whether she was employed in 1956 does not appear. Certainly, under the showing made, the former wife had a greater not a lesser need in 1962 than she had 10 years previous. Her sole source of income was the alimony. She had removed her residence to Germany. That, of course, does not show less need in 1962. She had leased a house in Germany relying on the continuation of the alimony payments. This shows no less need in 1962 than in 1956. As to the former wife, therefore, it is quite clear that there was a total failure to show less need in 1962 than in 1956.

As to the claimed change of circumstances of the husband as to his ability to pay, he showed that he had remarried, had a child by his present wife, and that it was difficult to support his first wife and his present family. This is not a change of circumstances that, alone, would justify a modification. In *Reed* v. *Reed*, 128 Cal.App.2d 786 [276 P.2d 36], the husband attempted to justify a modification order on the ground he had remarried. The court properly stated (p. 792) : "The fact of the husband's remarriage is, of course, established, and that is a circumstance that may be considered, although in itself alone it would not be justification for reducing the former wife's alimony if her needs demanded its

continuance at the same amount as in the past. His remarriage, as said in *Long* v. *Long,* 76 Cal.App.2d 716, 723 [173 P.2d 840], does not exempt him from providing for her support." Thus, the remarriage of the husband, alone, cannot justify the modification. It is true that the husband made a showing that his method of working had changed since 1956, but it was also shown that his income was not below what it was in 1956. There was no showing that his needs, except for the remarriage, had increased. In this connection it must be remembered that in 1956, as part of the modification then ordered, he stipulated that he would not seek further modification unless his income diminished. While that stipulation is not binding on the trial court, it is a factor to be considered in determining whether a further modification should be permitted. This is an equitable proceeding, and the fact that the husband secured one modification predicated on his promise, is certainly a factor that should be considered by a court when determining whether to grant the husband a further modification in direct violation of his promise.

The 1956 award gave the wife $250 for Christopher's support. The 1962 award gave the husband custody of Christopher for the nine months of the school year. This did not impose a greater financial responsibility on the husband, because during those nine months he was relieved of any payment to his former wife for Christopher's support. The $250 is apparently the amount necessary for Christopher's support. Thus the 1962 order did not increase the financial obligations of the husband.

These are the only facts that the majority opinion sets forth as a change in the circumstances of the parties as far as the needs of the wife or the ability to pay by the husband are concerned.

While it is the law that, in modification proceedings, the trial court has great discretion, such discretion is not unlimited. To justify a modification there must be evidence of a change of circumstances in one or the other or both respects mentioned. Here there was no such showing. It follows that there was an abuse of discretion in making the modification. The order should be reversed.

Tobriner, J., concurred.

Appellant's petition for a rehearing was denied March 17, 1965. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.