[Civ. No. 43780. Second Dist., Div. Five. May 29, 1975.]

In re the Marriage of VIRGINIA G. and MARVIN R. KUPPINGER.
MARVIN R. KUPPINGER, Respondent, v.
VIRGINIA G. KUPPINGER, Appellant.

## Counsel

Willard J. Stone and Marilyn V. Freytag for Appellant.

Hahn & Hahn and Leonard M. Marangi for Respondent.

## Opinion

**ASHBY, J.**—Respondent (Husband) sought a reduction of spousal support on the ground of material change of circumstances. Appellant (Wife) appeals from an order modifying spousal support.

Husband and Wife were married on June 6, 1940. In November 1961 Wife was severely injured in an automobile accident. Husband and Wife

separated on October 1, 1963, approximately two years after Wife's accident. For 32 years, continuing during the entire course of the marriage until the date of her accident, Wife owned and operated a ballroom dance business for children.[1] During the 10 years prior to the accident, the business had grossed $100,000 a year, netting approximately $50,000 to $60,000 each year.

An interlocutory judgment of divorce was entered on April 6, 1966. Husband and Wife entered into a property settlement which was integrated into the judgment of divorce. Pursuant to that property settlement and support agreement, Wife received as her share of the community property the equity in the family home, two acres of unimproved property in Poway, and some cash and securities in the approximate value of $42,000. In addition, Husband was to pay Wife "for her support care and maintenance, as alimony, the sum of $750.00 . . . continuing thereafter until the death or remarriage of wife or the death of husband, whichever shall first occur."

On June 29, 1973, Husband filed an order to show cause requesting termination of spousal support. Since the divorce in 1966, Wife's only income other than interest on her savings account had been disability payments of $206 which began in 1968 and the $750 support paid by Husband. After a hearing on August 9, 1973, during which both Husband and Wife testified, the court, on August 23, 1973, filed an order modifying the spousal support payments from $750 a month to $375 per month, commencing September 1, 1973, and terminating all spousal support on November 24, 1975, the date on which Husband will become 65 years of age. In its order the court made the following findings:

"1. The Court finds that there have been the following material changes of circumstances affecting the parties since the entry of the Interlocutory Judgment of Divorce herein on April 11, 1966:

"a. Respondent [Wife] has become entitled to and is receiving Social Security payments in the approximate amount of $206.00 a month.

"b. Subsequent to January 1, 1973, respondent has received a substantial capital gain from the sale of real property, which was formerly the community property of the parties, in the approximate amount of $54,000.00.

---

[1]Wife attempted to operate the business for a year and a half after her accident but was unable physically and the business was sold.

"c. Respondent has accummulated [*sic*] capital assets of an approximate market value of $127,000.00.

"d. Petitioner [Husband] has remarried.

"e. Petitioner will be eligible for retirement and Social Security benefits on November 24, 1975.

"2. The Court further finds that there have been additional minor changes of circumstances of the parties since the entry of their Interlocutory Judgment of Divorce."

## THE ISSUE

The issue presented by this appeal is whether or not the trial court abused its discretion in reducing spousal support and in terminating that support on a date certain without retaining jurisdiction.

## MODIFICATION OF SUPPORT

■ The general rules applicable to this issue are well settled. In exercising its discretion the trial court must take into consideration both the needs of the wife and the ability of the husband to meet those needs. (*Sweeley* v. *Sweeley,* 28 Cal.2d 389, 390 [170 P.2d 469]; *Pencovic* v. *Pencovic,* 45 Cal.2d 97, 100 [287 P.2d 501]; *Baron* v. *Baron,* 9 Cal.App.3d 933, 943 [88 Cal.Rptr. 404].) The "[r]easonable needs of a wife commensurate with her station in life are a circumstance the court should consider in determining a just and reasonable amount of her support (*Nunes* v. *Nunes,* 62 Cal.2d 33, 38 [41 Cal.Rptr. 5, 396 P.2d 37]; *Hall* v. *Hall, supra,* 42 Cal.2d 435, 442 [267 P.2d 249]; *Millington* v. *Millington,* 259 Cal.App.2d 896, 918-920 [67 Cal.Rptr. 128]); and embrace more than bare necessities. (*Sweasey* v. *Sweasey,* 126 Cal. 123, 129 [58 P. 456]; *McChesney* v. *McChesney,* 182 Cal.App.2d 268, 272 [5 Cal.Rptr. 896].)" (*In re Marriage of Siegel,* 26 Cal.App.3d 88, 92 [102 Cal.Rptr. 613].) Although a trial court has broad discretion in awarding or modifying an award of spousal support, it is without authority to modify an order for spousal support unless there has been a material change of circumstances subsequent to the last prior order. (*Engelberg* v. *Engelberg,* 257 Cal.App.2d 821, 823-824 [65 Cal.Rptr. 269]; *Hester* v. *Hester,* 2 Cal.App.3d 1091, 1095 [82 Cal.Rptr. 811]; *Peterson* v. *Peterson,* 30 Cal.App.3d 477, 479 [106 Cal.Rptr. 482].) ■ Appellate courts will interfere only when, in viewing all the evidence most favorably in

support of the trial court's action, it appears from the total circumstances of the case that the trial court has abused its discretion. (*Baldwin* v. *Baldwin,* 28 Cal.2d 406, 413 [170 P.2d 670]; *Philbin* v. *Philbin,* 19 Cal.App.3d 115, 119 [96 Cal.Rptr. 408]; *In re Marriage of Patrino,* 36 Cal.App.3d 186, 188-189 [111 Cal.Rptr. 367]; *Modglin* v. *Modglin,* 246 Cal.App.2d 411, 414 [54 Cal.Rptr. 582].)

 Applying these rules to the facts of the instant case, we conclude that the circumstances set forth by the trial court as material do not support the court's order reducing Wife's support from $750 a month to $375 and that the court abused its discretion.

The evidence shows that the spousal support paid to Wife was not sufficient to meet her needs and maintain her standard of living.[2] Between the time of the divorce in April 1966 and the sale of the Poway property in January 1973, she was required to expend $40,000 of the $42,000 of cash and securities she received under the property settlement in order to supplement the support payments from Husband. To meet her continuing need to supplement the support payments, Wife sold the nonincome-producing Poway property for net cash proceeds of $89,000, which constituted a capital gain of $54,000. The proceeds of that sale were disbursed as follows: $50,000 invested in nonincome-producing gold coins and silver bullion which Wife testified had a value of $35,000 at the time of the support modification hearing, and approximately $35,000 deposited in savings accounts to replenish funds already

---

[2]Wife's expenses as set forth in her financial declaration filed on the day of the hearing, August 9, 1973, are as follows:

Total monthly expenses:

| | |
|---|---:|
| Rent or mortgage payments (residence) | $160.00 |
| Real property taxes (residence) | 250.00 |
| Real property insurance (residence) | 20.00 |
| Maintenance (residence) | 79.00 |
| Food and household supplies | 200.00 |
| Utilities | 130.00 |
| Telephone | 45.00 |
| Laundry and cleaning | 10.00 |
| Clothing | 75.00 |
| Medical | 250.00 |
| Entertainment | 75.00 |
| Incidentals | 75.00 |
| Auto expenses (insurance, gas, oil, repair) | 142.00 |
| Household help | 200.00 |
| Gardener and maintenance man | 100.00 |
| TOTAL EXPENSES | $1,811.00 |

expended to supplement support payments and for payment of capital gains taxes in excess of $13,000.

█ Husband suggests, without citation of authority, that Wife had an obligation to invest the proceeds of the Poway sale in income-producing assets and argues that she should not be permitted to contend that she has no income. We are not persuaded. The Poway property was nonincome-producing property. By selling it and investing a portion of the proceeds in gold coins and silver bullion, Wife merely transformed one nonincome-producing asset into another.

█ Husband argues that Wife no longer needs live-in help and is now eligible for Medicare and therefore her living expenses have been substantially reduced. Although Wife's physical and mental condition has greatly improved, she is disabled and is not employable.[3] Husband does not dispute this fact. There has been no showing that her needs have been reduced to the point where she would not continue to need the $750 a month support payments. Since the support paid by Husband has not been sufficient to meet her needs and she has been required to supplement those payments, a mere reduction in Wife's expenses does not prove that her need for support has been reduced.

The trial court found as a material change of circumstances that Wife had accumulated assets with the total value of $127,000. This amount was arrived at by adding to those assets already discussed an equity value of $42,000 in Wife's home, which she received in the property settlement agreement.[4] At the time of the modification hearing in August 1973, Wife had lived in that home for a period of more than 33 years, beginning prior to her marriage to Husband. It clearly would be unreasonable to expect her to sell her home in order to provide liquid

---

[3]Wife testified to her physical condition from May 1972 as follows:

"A [Wife]: . . . I was able to walk around the block. With help, up and down the steps, one step at a time, with help, or the railing, . . .

"Q [Counsel for Wife]: Had you used a walker before that time?

"A: I had used a walker. I went from a wheelchair to crutches, and crutches to holding onto something. I did not use a walker until about two years ago. . . .

"Q [Counsel for Wife]: You no longer use a walker?

"A [Wife]: No.

"Q: Were you able to walk unassisted?

"A: Except for the last week or so. I have to have assistance, and I can't drive now."

[4]The property received by Wife in the property settlement seems modest enough in view of the fact that her contribution to the community during just the 10-year period prior to her accident was more than half a million dollars.

assets to offset a reduction in spousal support paid by Husband, especially in the absence of a showing that Husband did not have the ability to make the required payments. No such showing has been made. Husband was making less than $25,000 a year prior to the divorce in 1966 when the $750 a month support was agreed to in the property settlement. His salary has more than doubled since that time.[5] In 1972 his income was $58,832.[6] In the seven months prior to the modification of support hearing in August 1973, he had earned $55,000. In addition, his second wife contributes both income and capital to the marriage, as did Wife during her marriage to Husband.[7]

In 1972 Husband spent $7,500 for travel and $5,000 for entertainment. He testified that these amounts are typical annual expenditures for travel and entertainment.[8]

Husband argues that Wife "obviously was not concerned for her future security when she attended a racing meet at Santa Anita Race

---

[5]His earnings placed Husband in the 50 percent income tax bracket.

[6]He also received an income tax refund of approximately $10,000.

[7]In answering a question from the court, Wife testified: ". . . I maintained my own expenses throughout our marriage, and Mr. Newell [Wife's counsel] can explain the arrangement. . . ."

[8]Husband's average monthly expenses as set forth in his financial declaration filed June 29, 1973, are as follows:

| | Average/Month |
|---|---|
| Mortgage payments (residence) | $ 232.00 |
| Bank loan (wife) | 72.74 |
| Interest payments (husband) | 47.17 |
| Real property taxes | 166.08 |
| Insurance (excluding auto) | 128.37 |
| Residence maintenance (pool, gardening, etc.) | 220.27 |
| Food & household (housekeeper, etc.) | 447.96 |
| Utilities (gas, water, power, & telephone) | 79.89 |
| Laundry & cleaning | 50.52 |
| Clothing | 288.46 |
| Medical (doctors, dentist, drugs, etc.) | 214.28 |
| Spousal support payments | 750.00 |
| Entertainment (California Club, Annandale Club dues, etc.) | 458.80 |
| Miscellaneous | 308.41 |
| Automobile (insurance, gas, parking, repairs) | 176.32 |
| Travel | 558.00 |
| Contributions | 17.95 |
| Income tax preparation | 16.67 |
| Lester Ryan Liquidating Trust | 64.33 |
| TOTAL MONTHLY EXPENSES | $4,298.22 |

Track four times a week for four weeks in 1972[9] and gave very expensive vacation trips to her eighty-eight (88)-year-old father and stepmother in 1970, 1971, 1972 and 1973, at a total cost of many thousands of dollars.[10] These factors clearly indicated to the trial court that [Wife] was not in need of continued financial support from [Husband], who was experiencing serious financial difficulties, notwithstanding the contribution of his present wife's income and a portion of her capital to their living expenses each year." This argument is not impressive. Husband's discretionary spending far exceeds the $750 a month support payments to Wife. Also it is readily understandable that a woman who lost a husband of 26 years, a business she conducted for 32 years, and who has suffered from injuries and impaired health to the extent that she was an invalid for more than a decade[11] might wish, when sufficiently recovered to travel, to do so and to provide the means for her 88-year-old father to accompany her.[12]

---

[9]"Q [Counsel for Husband]: In 1972 you attended the Oak Tree Racing Meet frequently while it was running?

"A [Wife]: Yes, and you will find that my $65 membership is listed under entertainment.

"Q: Did you bet at those races while attending?

"A: I did, and I am glad to say that I won betting-wise. I didn't pay all of my lunches or my membership, but I did come out ahead betting-wise, and I bet very lightly."

[10]The money expended on her 88-year-old father did not come from her support payments or proceeds from the sale of assets received under the property settlement agreement but rather from the sale of three insurance policies on Wife's life.

[11]In regard to her confinement Wife testified:

"Q [Counsel for Wife]: Now, subsequent—let us say from the divorce on, were you largely confined to your home?

"A [Wife]: Definitely. Yes.

"Q [Counsel for Wife]: How long did that exist?

"A [Wife]: Entirely. I wasn't out at all, except those three times a year, until a year ago last—it will be two years this—well, actually, it was till after that. It was just the spring of—just last year, the spring of '72 I was able to start out and took driving lessons again, and after I knew I could come back to the point of driving."

[12]Under examination by Husband's attorney, Wife testified:

"Q: In 1972 you, your father, and his wife took a trip to Alaska?

"A: 13 days. Yes.

". . . . . . . . . . . . . .

"Q: Again, the portion attributable to your father and his wife was a gift by you to them?

"A: Now, the Alaska was a gift to them, yes, but therapeutically it was the means of me starting from September 8th, almost two years ago, to—on this program before they knew they were going, as a goal. I set one goal. They didn't know I was going until Easter, until I proved to myself that I was physically able to, and, of course, we had adjoining cabins.

"I couldn't have gone without them, and I wouldn't have sent them except for this particular purpose that I had established as a goal.

"Q: Was there some reason for your expending some $2800 of your funds in 1971 on your father and his wife?

". . . . . . . . . . . . . .

■ One of the two changed conditions relating to Husband which the court found material is the fact that he has remarried. That does not of itself, of course, justify a reduction in support to Wife, although under most circumstances it is a factor which the court may consider. (*Levitt* v. *Levitt,* 62 Cal.2d 477, 484 [42 Cal.Rptr. 577, 399 P.2d 33]; *Reed* v. *Reed,* 128 Cal.App.2d 786, 792 [276 P.2d 36]; *Werner* v. *Werner,* 120 Cal.App.2d 248, 252 [260 P.2d 961].) ■ Any weight this factor would be given is diminished by the fact that during the period since the divorce Husband's income has doubled. In addition, the record shows that, as did Wife during her marriage, Husband's second wife also is contributing to the marriage out of her personal funds. The trial court made no finding that Husband's additional expenses because of his remarriage had exceeded or even equaled his second wife's financial contribution to the marriage.

■ The social security payments of $206 per month referred to by the trial court as a material change of circumstances represent disability payments which Wife began receiving in 1968. Although Wife applied for and began receiving payments after the divorce, the record is silent on whether or not Wife was eligible for disability payments at the time of the divorce and therefore does not support a finding that she became entitled to the payments after April 11, 1966. (See *Philbin* v. *Philbin, supra,* 19 Cal.App.3d 115, 119; *Hester* v. *Hester, supra,* 2 Cal.App.3d 1091, 1095; *Engelberg* v. *Engelberg, supra,* 257 Cal.App.2d 821, 824.) Consequently we do not consider whether the disability payments should be treated as income to Wife which may accrue to the benefit of Husband. Even assuming that they should, it would probably make little or no difference in light of the amount by which Wife is required to supplement the support payments. Since the case must be reversed in any event, this matter can be resolved by the trial court.

Taking into consideration the totality of circumstances, we hold that the trial court abused its discretion in modifying support to reduce the monthly payments to Wife from $750 a month to $375.

TERMINATION OF SUPPORT AND<br>FAILURE TO RETAIN JURISDICTION

■ As stated in *Miller* v. *Miller,* 11 Cal.App.3d 197, at page 201 [89 Cal.Rptr. 643], quoting *Engelberg* v. *Engelberg, supra,* at page 824, "the

---

"A: No. It was simply the fact that I—was the only one—the sole one that stood through me all of these years, and I had felt—I don't mean just an obligation, but a very—
"Q: You wanted to do something?
"A: Something important."

court in proceedings of this nature is not concerned with 'merely a possibility which had not, and might not, occur.' *Engelberg* also quotes the following (fn. 2, p. 825) from an early case which is here pertinent: 'But the power to make such orders must be held to be limited to the conditions and circumstances existing at the time they are made. The court cannot then anticipate what may possibly thereafter happen, and provide for the future contingencies.' (*Schammel* v. *Schammel,* 105 Cal. 258, 261 [38 P. 729].)" (See also *Philbin* v. *Philbin, supra,* 19 Cal.App.3d 115, 122.)

There is no basis for the trial court's finding that Husband's eligibility to retire in November 1975 is a material change in circumstances. At the time the original support order was made by the court, it was a fact that Husband would be 65 in November of 1975 and thus just as eligible to retire as he is now. Eligibility cannot be treated as retirement. The fact that Husband will be eligible merely creates a possibility of retirement. He may not retire. Husband is employed as a stockbroker. There is no showing that there is a requirement of mandatory retirement. Mere eligibility to retire does not constitute a material change on which a modification of support can be based.

When it ordered the support payments terminated in November of 1975, the court did not retain jurisdiction. In so doing, the court erred. The marriage involved in this case was lengthy, almost 26 years. There is no showing whatsoever that Wife will be able to work and support herself. Without income she may be required to use her assets, which, when they are dissipated, would leave her without any means of support. As we said in *In re Marriage of Dennis,* 35 Cal.App.3d 279, at page 285 [110 Cal.Rptr. 619], the court "was not warranted in burning its bridges." (See also *In re Marriage of Rosan,* 24 Cal.App.3d 885, 897-898 [101 Cal.Rptr. 295].)

For the reasons stated, the order is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Kaus, P. J., and Hastings, J., concurred.