59 Cal.Rptr. 891]

[Civ. No. 11555.   Third Dist.   June 22, 1967.]

RALPH B. RUSSELL, Petitioner, v. THE SUPERIOR COURT OF PLACER COUNTY, Respondent; MARY T. RUSSELL, Real Party in Interest.

Bowers & Sinclair and F. L. Sinclair for Petitioner.

No appearance for Respondent.

Al B. Broyer for Real Party in Interest.

PIERCE, P. J.—We issued an order to show cause on the petition of the defendant-cross-complaining husband for a

writ of prohibition in this divorce action to examine the question whether the trial court had lost jurisdiction to reconsider and possibly extend an alimony award on the wife's petition. The latter petition had been made after the final decree of divorce in which the subject of alimony is not mentioned. A refined version of the question is: Had the court, as it intended to do, reserved jurisdiction over alimony until one of the parties reminded the court of a prearranged and stipulated plan that the wife's needs for such support were to be reexamined when the final decree was made, notwithstanding the fact the court was not actually reminded until more than 10 months thereafter? We have concluded the trial court is correct in its decision it had so reserved jurisdiction and that power remained to consider the wife's petition made seven months after alimony payments fixed in the decree had stopped. The steps of reasoning which lead to this conclusion will better follow than precede a statement of the facts.

On February 23, 1965, an interlocutory decree of divorce was awarded to the wife on her complaint; one was also awarded to the husband on his cross-complaint. Many issues were the subject of a stipulation between the parties entered into in open court. As recorded in the minutes (which have been made a part of the petition here) the material portions of said stipulation are: "that if the Court grants a divorce . . . the court may award the plaintiff $200 per month alimony for six months commencing with her quiting [*sic*] possession of the family home, and for six months thereafter alimony in the amount of $100 per month: *upon entry of a final decree, both parties request that the matter of alimony be reviewed*; that the P.G.&E. Company stock of the parties be divided one-half to each; that the amount of the retirement fund in the Pacific Gas and Electric Company be divided one-half to each; home of the parties to be purchased by defendant by his giving to plaintiff a promissory note to be secured by second deed of trust of parties to be paid at the same time and manner as equity in the home. Purchase price of $18,500 less encumbrances and taxes for years 1963-64, 1964-65. Said promissory note to be for said sum so determined, plus one-half of the retirement fund, interest rate of 6% per annum until paid; defendant to have possession of home on or before March 15, 1965, in order to sell said real property. . . ." (Italics added.)

A written stipulation predating the one mentioned in the minutes differs in its language. As regards the court's re-

served power to modify alimony that stipulation says: "[U]pon the granting of the final decree of divorce herein, the Court *may* re-evaluate the alimony award and make some further order herein. . . ." (Italics supplied.)

The interlocutory decree of divorce, filed February 23, 1965, was prepared by the attorneys for the husband. Substantially the language of the written stipulation quoted above was carried over into the decree.

A final decree of divorce, also prepared by the husband's attorneys, was signed by the trial judge and entered January 5, 1966. When said attorneys presented the decree for signature, the judge was not reminded of the previously agreed upon plan to "review" the matter of alimony and no mention was made thereof in the decree. Copies of the decree were duly mailed by the husband's attorneys to the wife's attorney on January 7, 1966.

On January 31, 1966, the latter wrote a letter to the former. As has been shown certain shares of stock had been awarded the wife and the husband had agreed to list the home for sale. In the letter the wife's attorney complained that the stock certificates had not been delivered and the house (which, in the meantime, had been delivered by the wife to the husband March 15, 1965, pursuant to the stipulation and decree) had not been listed for sale by the husband and had not been sold. The letter also stated: [I]f it is necessary for us to appear in Court again with additional proceedings I shall ask for additional attorneys fees for the prosecution of such additional proceedings and at that time will also ask for a re-evaluation of alimony as provided for in the Interlocutory Decree of Divorce. . . ." No reply to this letter is before us.

On October 13, 1966, the wife filed her notice of a motion to obtain a re-evaluation of the alimony allowance. In her accompanying declaration the grounds are stated to be her inability to obtain employment because of chronic asthma, because of her age, fifty-three, and because (apparently) of inactivity away from the business world during 16 years of marriage. She alleged she had no income excepting payments by her husband on the promissory note given pending the sale of the still unsold home. The merits of her motion do not come within the purview of this proceeding; only the question of the court's jurisdiction. That question is before us because the trial court after considering the same objections and arguments by the husband as those now made here filed, on November 21, 1966, a "Memorandum of Decision" deciding it *had*

.jurisdiction.[1] Further proceedings in the superior court were interrupted by our orders.

Well-established rules aid us in evaluating the facts stated. Civil Code section 139, insofar as it is here applicable, provides that the trial "court may compel the party against whom the [interlocutory or final] decree or judgment is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just. . . ." Such allowance "may be modified or revoked at any time at the discretion of the court. . . ." In *Bratnober* v. *Bratnober*, 48 Cal.2d 259, at page 262 [309 P.2d 441], it was held that justification for alimony modifications depends upon the facts and circumstances of each case and that changing circumstances may call for modification from time to time; that the court reserves jurisdiction for that purpose. When the court has granted a divorce to both spouses, it may award alimony (under Civ. Code, § 139) to either. (*See* v. *See*, 64 Cal.2d 778, 782 [51 Cal.Rptr. 888, 415 P.2d 776]; *De Burgh* v. *De Burgh*, 39 Cal.2d 858, 874 [250 P.2d 598].)[2]

---

[1]The memorandum of decision provides in part as follows:

". . . The defendant argues that at the time of the entry of the final judgment the plaintiff had the duty to bring the matter of the re-evaluation of alimony to the Court's attention for decision thereon, and she having failed to do so, the matter became final and no further jurisdiction remains. This argument, however, is not supported by the clerk's minutes, which state that the stipulation of counsel in court on February 11, 1965 on the subject was, '—upon entry of a final decree, *both parties request* that the matter of alimony be reviewed.' (Italics added.)

"While the wording of the stipulation in the clerk's minutes is not exactly the same as the wording in the written stipulation and the interlocutory judgment of divorce, yet it is not in conflict, and the clerk's minutes of the stipulation clearly demonstrate the intent of the parties on the subject, *and the Court's intent upon accepting the stipulation.*" (Italics added.)

[2]In the interest of completeness it is noted that where there has been no reservation of power by the court to make any award of alimony and none is made in the interlocutory decree, there is no jurisdiction to make an award later. (*Wilson* v. *Superior Court* (1948) 31 Cal.2d 458, 464 [189 P.2d 266].) Where an award is made for a definite time without reservation of a right to modify or extend beyond that time and such time has expired, jurisdiction is also lost. (*Tolle* v. *Superior Court*, 10 Cal.2d 95, 98 [73 P.2d 607]; *Long* v. *Long*, 17 Cal.2d 409, 410 [110 P.2d 383].) Before 1965, case law had held that where the court had fixed a limiting alimony payment date it had jurisdiction *at any time before* the expiration of that date to modify. (*Schraier* v. *Schraier* (1958) 163 Cal.App.2d 587, 589 [329 P.2d 544]; and see 3 Witkin, Summary of Cal. Law (1960) Husband and Wife, § 119, pp. 2665-2666.) But in 1965 the Legislature enacted Civil Code section 139.7, providing that where the court has awarded alimony for a limited time it "shall not be extended unless the court in its *original* order retains jurisdiction." (Stats. 1965, ch. 1109.) (Italics added.) The new section took effect after the trial of this case.

■ In the case before us alimony was not only fixed; jurisdiction to modify was also reserved. At the trial, as pointed out above, stated payments for support of the wife, commencing to run from an also stated event (her vacating of the home) and continuing for 12 months thereafter, were stipulated to. Also it was stated "both parties request" a reappraisal of the allowance of alimony to be made by the court. It was also agreed as to when the reevaluation was to be made—at the time of the final decree.

All of these were not only matters of agreement between the spouses expressed in open court; they were also accepted by the court and, in addition—which is all important—the terms of the stipulation were acted upon by the judge *and his intention as to what he meant to do were clearly and, we think, unequivocally, expressed in the minutes.* This intention was also restated in the court's "Memorandum of Decision." (Footnote 1.)

■ It was not intended under the stipulation that the court's jurisdiction was to terminate unless application for a modification was made on the date of the entry of the final decree. The court did not so understand the application and such limitation of power was not so expressed in the minutes. The *expressed* intent of the parties and the court was to reserve the general power to modify as contemplated by Civil Code section 139 and the cases cited above construing it. The fact of a reevaluation had been agreed upon and ordered by the court unconditionally. Inclusion of provision for the time —the making of the final decree—was merely a convenient occasion when the already-agreed-to-and-ordered reevaluation was to occur.

■ The language of the interlocutory decree taken over from the written stipulation was not so unequivocally expressed. (We have explained above the circumstances of its preparation.) In the sentence, "upon the granting of the final decree of divorce herein, the Court may re-evaluate the alimony award," the word "shall" should have been used, according to the minutes and according to the court. (See footnote 1.) It is well settled that "While 'may' is usually considered a permissive term, it . . . [is sometimes] interpreted as mandatory. . . ." (*Struhm* v. *City Council* (1964) 229 Cal.App.2d 278, 281 [40 Cal.Rptr. 230].) The decree is ambiguous; the court has explained its true meaning in its memorandum. That is not to say that a memorandum by a

Its applicability is debated by the parties. Our discussion and decision, however, are unaffected by the change in the law.

court supersedes a clearly expressed, intentionally made, order. The contrary is true—as applied to a conflict between a memorandum opinion, on the one hand, and findings, judgments or orders, on the other, contradicting such opinions. (See 3 Witkin, Cal. Procedure (1954) Appeal, § 77, pp. 2236-2237, and cases cited.) ■ We do not have such a situation here. We have a judge explaining what he meant by what he said. There was an error in the decree—or more accurately stated—an ambiguity. A clerical error may be corrected at any time. A judicial error (unless it results in a judicial act in excess of jurisdiction) may not be corrected after the time for appeal has expired.[3]

There is danger when courts play with labels such as "clerical error" and "judicial error" without definition and distinctions which are meaningful. We are not always immune from temptation to categorize to reach a desired result. Applied to those very terms, Mr. Witkin discusses this tendency in 1 Witkin, California Procedure (1954) Jurisdiction, section 145, pages 406-409. But he, himself, seems to limit definition of "clerical error" to a single word definition: "inadvertence." The case he criticizes, *Key System Transit Lines* v. *Superior Court* (1950) 36 Cal.2d 184 [222 P.2d 867] (a petition for writ of prohibition involving the vacating of an order dismissing the action of a dilatory plaintiff) says (on pp. 187-188) : ". . . In 1 Freeman on Judgments (5th ed.) p. 432, it is said that where the court is deceived or is laboring under a mistake or misapprehension as to the state of the record or as to the existence of extrinsic facts upon which its action is predicated, it has inherent power to vacate a judgment which would otherwise not have been rendered. . . ."

*Brown* v. *Brown,* 162 Cal.App.2d 314 [328 P.2d 4], was a divorce action presenting the converse of the situation here involved. There the court had determined its minutes were *in*correct. The court stated (on p. 318) that determination of whether its minutes or its written order were correct was a matter " 'completely and solely within his [the trial judge's] own knowledge. He alone knew whether a mistake had been made and how it had been made. He had a right to rely upon his own memory . . . and his determination of the fact is conclusive.' " Cited in *Brown* are *Kohlstedt* v. *Hauseur,* 24 Cal.App.2d 60 [74 P.2d 314] ; *Carpenter* v. *Pacific Mut. Life*

---

[3]Relief, however, may be had when the conditions of Code of Civil Procedure section 473 exist. That section is inapplicable in this case. More than six months had elapsed when the wife's motion was noticed.

*Ins. Co.*, 14 Cal.2d 704, 708-709 [96 P.2d 796]; and *Livesay* v. *Deibert*, 3 Cal.App.2d 140, 147 [39 P.2d 466]. In all of those cases the trial court was said, or held, to have the inherent power to correct "clerical errors." In *Griffith* v. *Superior Court* (1934) 1 Cal.2d 381 [35 P.2d 371], recourse was had by the trial court to its minutes to supply an omission from the interlocutory decree of support payments intended to be included and with power of modification reserved. This court and the California Supreme Court approved the trial court's revised order as being within its jurisdiction.

We do not have to rule that the declared intention by a trial court that it intended to provide alimony or reserve the future power to do so or to modify is inevitably the correction of a "clerical mistake." ■ For the purposes of this case all we need to, and do, rule is that "a clerical mistake" includes an ambiguous provision in a decree seemingly changing from the positive to the permissive that which was actually agreed to and ordered in open court.

Actually, the mistake was not that of the judge. The mistake was that of the draftsman of the decree—the husband's lawyer. In these times busy judges must of necessity rely heavily upon the attorneys to prepare orders and judgments accurately so that they express that which was done at the trial and that which the judge had called for.

Argument here that both the written decree and the written stipulation reflected accurately the *husband's* understanding begs the question. ■ The understanding of the court, not that of the parties, is the determinative factor. ■ In a divorce action the court and not the parties decides whether or not there shall be an allowance of support money and whether or not the power shall be reserved to modify, or revoke, such an award as provided by Civil Code section 139. The court has power to comply with, or completely disregard, the wishes and stipulations of the parties.[4] The court acts only as the interests of justice may, in the court's discretion, require. (*Levitt* v. *Levitt* (1965) 62 Cal.2d 477 [42 Cal.Rptr. 577, 399 P.2d 33]; *Smith* v. *Superior Court* (1928) 89 Cal. App.177, 190 [264 P. 573].)

The order to show cause is discharged. The petition for a writ of prohibition is denied.

Friedman, J., and Regan, J., concurred.

---

[4] We are not concerned here with integrated property settlement agreements or their effect in connection with an interlocutory decree. Integration is not involved here.