[Civ. No. 31925.   Second Dist., Div. Five.   Sept. 6, 1968.]

CORLISS CAMPBELL LA CLARE, Plaintiff and Appellant, v. ROBERT WAYNE LA CLARE, Defendant and Respondent.

Pregerson & Costley and William M. Costley for Plaintiff and Appellant.

Sanford Simon for Defendant and Respondent.

MOOR, J, pro tem.*—Plaintiff commenced an action for divorce on October 6, 1964. There then followed a period of approximately eight months until a property settlement agreement was made between the parties with the aid of their counsel. The property settlement agreement made provisions for the division of the community property whereby plaintiff was awarded $3,000 in cash plus a half interest in the family home from which she later realized $14,000. The terms of the property settlement agreement were incorporated in the interlocutory judgment, which judgment also ordered the defendant to pay to appellant the sum of $50 per week alimony. The court retained jurisdiction to modify or discontinue the support and maintenance of the wife.[1]

On May 26, 1965, when the interlocutory decree of divorce was filed the parties had been married for 22 years.

On July 29, 1965, and before the entry of the final judgment of divorce, defendant persuaded plaintiff to sign a written agreement, acknowledged by a notary public on the same date, whereby for $1,200, an amount equal to six months' advance alimony, she released defendant from ''any further alimony or support to me for the rest of his life from this day of July 29, 1965 forward.''

This agreement was signed outside the presence of the attorney for either party and without the advice, knowledge or consent of plaintiff's attorney.

On January 24, 1967, the superior court, pursuant to an order directing plaintiff to show cause why the interlocutory judgment of divorce should not be modified, and after hearing thereon, terminated permanently the alimony provisions of the interlocutory decree.

Plaintiff appeals from this order.

Plaintiff opposed the termination of her alimony on several

---

*Assigned by the Chairman of the Judicial Council.

[1]''Defendant is ordered to pay to the plaintiff for her support and maintenance the sum of $50.00 per week, payable on Monday of each week commencing on Monday, May 31, 1965, and continuing thereafter until defendant dies or plaintiff dies or remarries, or until further order of the court. The parties are now subject to the jurisdiction of the court and the court shall at any time have the right to modify or discontinue the support and maintenance of the wife.''

grounds among them being that throughout the litigation she had been represented by an attorney and that the defendant contacted her in her home and through the use of coercion, duress, undue influence and implied threats of physical violence and without the knowledge of plaintiff's attorney did force plaintiff to accept the sum of $1,200 as payment of the ensuing year's support to clear the matter for that year; that defendant insisted that plaintiff not have her attorney read the document before she signed it, and she did sign it not knowing that the same was a waiver of all of her future rights to alimony or support, and further, that during this period and at all times in the litigation, she was in an upset and distraught state of mind.

In support of her contention that she was in such a state of mind that she did not understand the nature of the document which she signed, her counsel offered in evidence numerous letters written to him by the plaintiff during periods of time before and after the day on which she signed the agreement. The letters were offered not for the truth of their contents but to prove the state of mind of the plaintiff at the time she signed the document. (There had been no other form of communication between plaintiff and her attorney. Plaintiff's attorney had not known of the execution of the agreement until plaintiff was served with the order to show cause.) The letters offered in evidence by plaintiff were similar in nature to letters which the defendant himself had offered to the court at the time of the divorce in support of a motion for mental and physical examination of plaintiff.[2]

Testimony at the hearing on the order to show cause disclosed that plaintiff was a woman past 55 years of age; unemployable, and in need of psychiatric care; that out of the monies awarded to her on the division of community property she had just a little over $2,000 left.

The trial court, in arriving at its conclusion that an order should be made terminating permanently the alimony to the wife, concerned itself only with solving the question of whether or not the wife was competent at the time she signed the agreement submitted to her by the husband.[3]

---

[2] The trial court had not acted upon this motion.

[3] "THE COURT: All right. I listened to the Argument, I feel from her testimony that she was competent and understood the Agreement, and there was a conflict as to whether or not there was any duress. I am going to resolve it against her, because I think his testimony and the testimony of the Notary Public indicated to me there wasn't any duress in connec-

514

■ Even under the court's reasoning it was error to deny plaintiff the right to offer competent evidence in support of her contention that she was in an upset and distraught state of mind and did not understand the nature of her act when she signed the agreement. The more serious error, however, was the fact that the court obviously limited itself in this hearing to the sole question of the competency of the wife to sign the agreement, and that having made this determination adversely to the plaintiff, granted the motion to modify without considering other circumstances. ■ The parties to a divorce action may not modify prospectively that portion of a divorce decree providing for the payment of support money to the wife by the simple act of agreeing to do so. The power to modify a decree of divorce in this respect is reserved to the courts alone. (*Russell* v. *Superior Court,* 252 Cal.App. 2d 1, 8 [59 Cal.Rptr. 891].)

■ The mere fact that the parties entered into an agreement which would have as its purpose the modification of that portion of the interlocutory decree providing for support money (particularly where the wife contested the agreement), standing alone and by itself, is not the only factor which the court must consider. The considerations which govern the court's modification of a preexisting decree are statutory and are contained in section 139 of the Civil Code. ■ ''Section 139 of the Civil Code gives the superior court power to require a husband to provide support for his divorced wife and the children of the marriage and from time to time to modify such orders for support where a divorce is granted for an offense of the husband. In *Johnson* v. *Johnson,* 104 Cal. App. 283 [285 P. 902], it is said: '' 'When the court awards alimony to an innocent wife it is not bound by the terms of a contract between the parties either as to its amount or its duration. The power to make the award is drawn from the terms of the statute and not from the agreement of the husband and wife. It follows that the power to modify the award of alimony either as to amount, duration, or time and manner of payment is inherent in the court unhampered by the terms of any contract which the parties might have entered into providing for the payment of any such alimony when it is given in the order or decree as maintenance only. [Citations.]'

tion with the signing of it. *So I am going to grant the motion to modify the Interlocutory Decree, terminating alimony as of July, 1965.''* (Italics added.)

"It would therefore seem clear that the superior court was not required by law to modify the divorce decree in accordance with the stipulation but was vested by the law of the state with a discretion empowering it to decide the question of the modification of the decree independent of and contrary to the agreement of the parties. . . ." (*Innes* v. *McColgan,* 47 Cal.App.2d 781, 786 [118 P.2d 855].)

Since appellant does not raise the point, we do not discuss whether the order is erroneous, because no change in circumstances is shown in the record. *Engleberg* v. *Engelberg,* 257 Cal.App.2d 821 [65 Cal.Rptr. 269]; *Moore* v. *Moore,* 133 Cal.App.2d 56, 58-59 [283 P.2d 338]; *Ralphs* v. *Ralphs,* 86 Cal.App.2d 324 [194 P.2d 592].)

The effect of the court order as it now stands would deprive the plaintiff wife of any kind of support from the husband for all times in the future. It does not have even the effect of a temporary modification whereby the court may, at some future time under appropriate circumstances, reinstitute the order for support.

For the reasons herein set forth the order modifying the interlocutory decree of divorce is reversed.

Kaus, P. J., and Stephens, J., concurred.