Filed 12/17/13  Marriage of Franco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of BRENDA and MICHAEL FRANCO. | |
| BRENDA CAMREN, <br><br> Appellant, <br><br> v. <br><br> MICHAEL FRANCO, <br><br> Respondent. | F065488 <br><br> (Super. Ct. No. VFL225319) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Amy I. Terrible for Appellant.

Betty E. Blanks for Respondent.

-ooOoo-

In 2010, appellant Brenda Camren offered a proposed stipulation to respondent Michael Franco that would change his spousal and child support obligations. Franco agreed to the proposal and both parties signed the stipulation. The Superior Court of Tulare County made the stipulation a court order. In 2012, Franco filed a motion to enforce the terms of the stipulated order as they related to child support and requested attorney fees and costs. The trial court granted Franco's motion and ordered Camren to pay attorney fees. On appeal, Camren contends that the ordered stipulation was against public policy because it excluded from consideration income "derived from a business other than each party's primary employment." She also asserts that the trial court abused its discretion when it recalculated child support payments based on a stipulated minimum income and awarded attorney fees. We find neither a public policy violation nor an abuse of discretion and affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY

Camren and Franco divorced in 2008. The judgment of dissolution, which incorporated findings made by Judge Jennifer Shirk, granted the parties joint legal and joint physical custody of their two minor children and ordered Franco to pay $300 per month in spousal support and $637 per month in child support.[1] Spousal support was set to expire on April 1, 2010, at which time Camren would be imputed an earning capacity of $3,000 per month.[2] Child support would also be reviewed in April 2010.

---

[1]     Judge Shirk found both parties to be "good parents and [to] have taken responsibility for the children during the marriage," but recognized Camren as the "parent primarily responsible for meeting the children's needs on a daily basis." She determined Franco's monthly income was $4,678 while Camren's monthly income fell below $1,380, the amount attributed to minimum wage.

[2]     Judge Shirk found Camren (1) worked in the banking industry prior to the birth of her second child and had earned $40,000 annually, and (2) currently worked as a part-time elementary school librarian and was in the process of obtaining a credential that she believed would lead to a pay increase. In view of these factors, Judge Shirk concluded Camren was capable of earning more than minimum wage and afforded her two years to

2.

In February 2010, Stanley M. Michner, then Camren's attorney,[3] contacted Franco via letter.[4] He detailed that Camren was laid off in June 2009 and unemployed, but had consulted a community college counselor and was planning to enroll in a 12-month pharmacy technician program that started in the fall. Michner continued:

> "Brenda wants to resolve this without going back to court. The court will consider Brenda's current circumstances as well as your current income that has increased since 2008, as well as your income from your graphic design business.[5] If the court reduced spousal support to zero, child support would most likely be increased. It is very possible and most likely that child support would be increased to an amount higher than the current combined child support and spousal support of $937.00 per month. In fact, looking at the guidelines, it could be as much as $1,200.00 per month.

> "Brenda wants to make the following proposal to resolve this matter without going back to court and incurring attorney's fees as well as not 'rolling the dice' to see what would happen. She is proposing that the child support order of $637.00 per month continue as well as the $300.00 per month in spousal support until June, 2011, when she completes her [pharmacy technician] program …. At that time, spousal support would terminate forever, and child support would be reviewed based upon everyone's income at that time. If you agree, I can prepare the stipulation for everyone to sign and forward it to you."

Michner drafted a "Stipulation And Order Thereon Modifying Judgement of Dissolution of Marriage Entered April 22, 2008" (full capitalization omitted) that set forth several provisions. First, spousal support would "irrevocably terminate" on April 1, 2011. Second, on or before August 1, 2011, child support would be recalculated using

---

achieve self-sufficiency pursuant to *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.

[3]   Michner filed a substitution of attorney form in July 2011 and thereafter did not represent Camren.

[4]   Franco was not represented by an attorney at that point.

[5]   Franco testified at the May 17, 2012, motion hearing that he received up to $1,200 for his business in 2011.

Franco's earnings as a teacher and Camren's income of "no less than $15 per hour at 40 hours per week [i.e., $2,600 per month], whether [she was] employed or not." Third, "[*n*]*o other income of either party shall be included at the time that child support is recalculated that is derived from a business other than each party's primary employment.*" (Italics added.) Fourth, the newly calculated amount would become effective August 1, 2011, and continue "until further order of the court." Franco and Camren signed the stipulation on March 30, 2010 and April 6, 2010, respectively. They acknowledged that (1) they were fully informed of their rights concerning child support, (2) they agreed to the stipulation without coercion or duress, (3) the stipulation was in the best interest of the children and would adequately meet their needs, (4) the right to support had not been assigned to the county, and (5) no public assistance application was pending. In April 2010, Judge Shirk signed the document: "The above stipulation is hereby ordered." (Full capitalization omitted.)

One year later, Betty E. Blanks, representing Franco, contacted Michner via letter to recalculate child support in accordance with the 2010 stipulated order. She provided Franco's 2010 W-2 form and his employee payroll history for the period April 18, 2010 to May 18, 2011, which showed a gross monthly income of $4,813. Blanks also enclosed a DissoMaster report computing $457 of child support per month,[6] an amended wage assignment form postdated August 1, 2011, and a "Stipulation For Modification of Child Support And Order Thereon" (boldface & full capitalization omitted) incorporating the newly calculated amount. Blanks did not get a response.

Starting August 2011, the Department of Child Support Services (DCSS) received from Franco monthly payments of $457 instead of $637. In November 2011, DCSS informed Franco by letter that Camren asked for review of the child support order.

---

**6** The report used Franco's updated earnings as a teacher and Camren's stipulated minimum income of $2,600 per month.

Franco furnished an income and expense declaration. In December 2011, DCSS advised Franco that the child support order could not be changed because Camren "did not complete and return the required income and expense forms or requested documents." DCSS continued to receive $457 monthly payments through February 2012. In March 2012, DCSS collected $1,812.55 from Franco via "multiple sources" to satisfy Franco's "arrears."[7]

In April 2012, Franco filed a motion to enforce the provisions of the 2010 stipulated order and requested $1,000 in attorney fees and costs. He specified that Camren and her attorney refused to respond to his attorney's attempts to recalculate the child support pursuant to that order and that DCSS seized his bank account and income tax refund for arrearage.

In May 2012, Camren filed a responsive declaration claiming that she was pressured by Michner to sign the stipulation and "did not fully understand all of the implications." She also alleged that Franco's earnings as a freelance graphic designer should be included in determining child support pursuant to Family Code section 4058.[8] Because a provision of the stipulation excluded business income from consideration, Camren contended that it was void. She added that she was unable to enroll in the pharmacy technician program and had received public assistance, but eventually obtained

---

[7] DCSS subsequently received $637 payments in April and May 2012.

[8] Family Code section 4058 provides, in relevant part:

"(a) The annual gross income of each parent means income from whatever source derived, … and includes …: [¶] (1) Income such as … salaries, … [and] wages, [and] …. [¶] (2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business. [¶] … [¶] (b) The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children."

All further statutory references are to the Family Code unless otherwise indicated.

5.

work as a high school librarian and testing coordinator in August 2011. Camren's income and expense declaration indicated that she received an average gross monthly income of $1,765.

In his points and authorities in support of his motion, Franco stated that the stipulated order complied with the requirements set forth in section 4065.[9] He also remarked that Camren lived with her boyfriend, managed his feed store, and took over ownership of a western clothing store.[10] The parties' reiterated their arguments at the motion hearing on May 17, 2012.

Following the hearing, Judge Kathryn Montejano granted Franco's motion and effectuated the 2010 stipulated order. The monthly child support was recalculated using Franco's employment income and Camren's imputed monthly income of $2,600. The new amount was ordered retroactive to August 1, 2011.[11] The court awarded $1,500 in

---

[9]     Section 4065 provides, in relevant part:

"(a) Unless prohibited by applicable federal law, the parties may stipulate to a child support amount subject to approval of the court. However, the court shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount. [¶] (5) The right to support has not been assigned to the county pursuant to Section 11477 of the Welfare and Institutions Code and no public assistance application is pending."

[10]     Camren testified that she lived with her boyfriend from the fall of 2010 until the end of April 2012 and, prior to August 2011, helped to manage his feed store and his deceased wife's western clothing store. She denied that she was compensated.

[11]     Judge Montejano ordered a monthly offset of $180 until Franco was fully reimbursed for his overpayment.

6.

attorney fees.[12]  Judge Montejano determined that Camren was "aware of her rights" and "fully informed" about the terms of the stipulation.[13]

## DISCUSSION

Camren makes three contentions on appeal.  First, a stipulated provision that omits consideration of business income for the purpose of calculating child support violates public policy and is, therefore, void.  Second, Judge Montejano abused her discretion when she imputed income to Camren as set forth in the findings of the April 2008 order.  Third, Judge Montejano abused her discretion when she awarded $1,500 in attorney fees absent a showing of Camren's bad faith.[14]  We now address each contention.

**I.      The stipulated provision that specifically omits consideration of business income for the purpose of calculating child support is not void as against public policy.**

The stipulated order detailed that, on or before August 1, 2011, child support would be recalculated based on Franco's employment wages and Camren's income of "no less than $15 per hour at 40 hours per week [i.e., $2,600 per month], whether [she] is

---

**12**      Franco had requested $2,250 in attorney fees at the hearing.

**13**      Judge Montejano also pointed out that the stipulated minimum income of $2,600 per month was lower than the imputed earning capacity of $3,000 per month established by Judge Shirk.

**14**      Camren argued that the record was "devoid of any finding by the court that [she] had the ability to pay, as required by [section] 270."  This argument was not raised below and was not stated under a separate heading or subheading.  We need not address it here. (See *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 457, fn. 4; *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 542; Cal. Rules of Court, rule 8.204(a)(1)(B) [requiring appellant to state each point under a separate heading or subheading].)  Even if we were to address the argument, however, we would find it unpersuasive.  The record did reflect that Camren "realize[d] that," if the trial court ruled in her favor, she would be required to return to Franco the additional $3,600 in spousal support he paid to her pursuant to the stipulated order.  Such information made it reasonably likely Camren had the ability to pay the attorney fee award of $1,500.  (See *Alicia R. v. Timothy M.* (1994) 29 Cal.App.4th 1232, 1239.)

7.

employed or not." In addition, any income derived from a business outside of Franco's or Camren's primary employment was expressly excluded from consideration. Both parties signed the stipulation and made the declarations required by section 4065. (*Ante,* fn. 9.)

Cameron argues that a stipulation to exclude business income from a child support determination is against public policy because it "subverts the definition of income" as found in section 4058, subdivision (a), it "'contract[s] away the child's right to support,'" and it "restrict[s] the court's jurisdiction over child support." Franco counters that such provisions are permitted by section 4065 and that the stipulation did not restrict the court's jurisdiction to modify the child support.

We review de novo questions regarding interpretation of child support statutes and application of legal principles. (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 731 (*Alter*); accord *Brothers v. Kern* (2007) 154 Cal.App.4th 126, 134.) The fundamental objective of statutory construction is to ascertain legislative intent so as to effectuate the purpose of the law. (Code Civ. Proc., § 1859; *In re Marriage of Harris* (2004) 34 Cal.4th 210, 221 (*Harris*).) In determining this intent, we not only examine the "usual, ordinary meaning" of the statutory language (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 469), but also consider the particular clause or section in the context of the statutory framework as a whole to harmonize the various parts of the enactment (*Harris*, at p. 222). An interpretation that renders related provisions nugatory must be avoided. (*In re J.B.* (2009) 178 Cal.App.4th 751, 756.)

California adopted the statewide uniform guideline (§§ 4050-4076) to "establish a system of standards and procedures providing for a uniform determination of child support awards throughout the state" (*County of Tulare v. Campbell* (1996) 50 Cal.App.4th 847, 850). Under the guideline, courts generally determine child support according to an algebraic formula based on the parents' incomes and custodial time with the child. (§ 4055; *In re Marriage of Smith* (2001) 90 Cal.App.4th 74, 80-81 (*Smith*).)

8.

"Income" is broadly defined as "income from whatever source derived" and includes salaries, wages, and "[i]ncome from the proprietorship of a business." (§ 4058; see *ante*, fn. 8.) The amount of child support calculated in conformance with the algebraic formula is presumed to be correct. (§ 4057, subd. (a); see also § 4053, subd. (k).)

Camren essentially proposes that the language of section 4058, subdivision (a) categorically prohibits parties from excluding business income from consideration. We reiterate, however, that we do not construe particular clauses or sections in isolation. Instead, we "'read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness."'" (*People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

The statewide uniform guideline provides that the presumption in favor of the formula amount, which is dependent on section 4058's definition of income, "may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case … because [at least] one [of five] factors is found to be applicable by a preponderance of the evidence …." (§ 4057, subd. (b).) One such factor is a stipulation. (*Id*., subd. (b)(1).) Parties may stipulate to an amount of child support subject to the approval of the court. (§ 4065, subd (a).) So long as certain prerequisites are satisfied, the guideline allows parties to determine child support in a manner that deviates from the default algebraic formula.

In support of her argument that the stipulation contracted away the children's right to support or restricted the court's jurisdiction over child support, Cameron cites several cases. None, however, support this assertion. In *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 445, the parties entered into an agreement to terminate the ex-husband's child support obligation and hold him harmless from any subsequent claims. The Fourth Appellate District held that "agreements between parents seeking to relieve one parent of his or her obligation of child support are void." (*Id.* at p. 452.) In *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 281, the parties stipulated to a dissolution judgment

9.

that, inter alia, required the ex-husband to provide for the housing needs of his children. The judgment specified, "Regardless of actual expenses … while occupying this residence, in any support hearing, the Court may not consider a monthly housing cost of over $3,000." (*Id.* at p. 281, fn. 3.) The Sixth Appellate District found that the $3,000 cap on the custodial household's monthly housing costs was not binding, explaining that the stipulation "'does not divest the court of authority to modify child support.'" (*Id.* at p. 294.) Finally, in *Alter*, *supra*, 171 Cal.App.4th at page 723, the parties' marital settlement agreement mandated that the ex-husband's child support obligation "'shall be absolutely non-modifiable downward throughout the term that child support shall remain in effect.'" The Sixth Appellate District explained that clauses that "'purport to restrict the court's jurisdiction over child support … are not binding on the children or the court, and the court retains jurisdiction to set child support irrespective of the parents' agreement.'" (*Id.* at p. 729.)

Here, by stark contrast, the disputed provision of the stipulated order did not release Franco from his child support obligation, impose a ceiling on the child support amount, or divest the court of jurisdiction over child support. Furthermore, the stipulation explicitly provided that its terms would be effective "until further order of the court."

The stipulated provision omitting consideration of business income for the purpose of calculating child support does not violate public policy.

## II. Judge Montejano did not abuse her discretion when she recalculated child support based on Camren's stipulated minimum income.

We review a child support order for abuse of discretion. We assess whether factual determinations are supported by substantial evidence and whether the trial court reasonably exercised its discretion. We do not substitute our own judgment for that of the court, but only determine if any judge reasonably could have made such an order. (*Alter*, *supra*, 171 Cal.App.4th at pp. 730-731.) Since the adoption of the statewide

10.

uniform guideline in 1992, "the court no longer has the broad discretion in ordering child support it had [before.]" (*Smith*, *supra*, 90 Cal.App.4th at p. 81.) "'[W]hen ordering child support the trial court lacks discretion to vary from the presumptively correct amount, calculated by applying the algebraic formula in the statue, unless one or more of the statutorily enumerated rebuttal factors is found to exist.'" (*County of Stanislaus v. Gibbs* (1997) 59 Cal.App.4th 1417, 1419, quoting *In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1026.) In addition, "Section 4057[, subdivision] (b) provides that any deviation from the guidelines must be consistent with the principles in section 4053, which designates interests of the children as a top priority and provides that parents should support their children at a level commensurate with their ability." (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1361.)

Camren argues that Judge Montejano abused her discretion because she recalculated child support based on the findings of the 2008 order. Although the trial court initially considered using the findings of the 2008 order, it ultimately chose instead to use the lesser amount agreed upon by the parties in 2010. Nevertheless, Camren also argues that Judge Montejano abused her discretion because she did not use her claimed income of $1,765 per month. We find no abuse of discretion.

The evidence in the record included Judge Shirk's 2008 findings imputing an earning capacity of $3,000 per month to Camren based on the latter's professional background (*ante*, at p. 2 & fn. 2), Michner's letter to Franco dated February 9, 2010, initiating negotiations on behalf of Camren about the terms of the original judgment of dissolution, and the stipulated order reducing Camren's imputed monthly income for the purpose of calculating child support from $3,000 to $2,600. The stipulation was originally drafted by Michner, plainly stated, in observance of section 4065, that the parties were fully informed of their rights, accepted the stipulation without coercion or duress, and concurred that the stipulation was in the best interest of the children and would adequately meet their needs, was signed by Franco and Camren, and was ordered

11.

by Judge Shirk. These facts supported Judge Montejano's finding that Camren was "aware of her rights" and "fully informed" about the stipulation, which constituted one of the factors listed in subdivision (b) of section 4057. Additionally, with respect to section 4053, which lists the principles the courts are required to follow when implementing the statewide uniform guideline, the enforcement of the stipulated order was not inconsistent with ensuring that "[b]oth parents are mutually responsible for the support of their children" (*id*., subd. (b)), that "the interests of children [are] the state's top priority" (*id*., subd. (e)), that "[e]ach parent … pay for the support of the children according to his or her ability" (*id*., subd. (d)), and that "fair and efficient settlements of conflicts between the parents [are made]" (*id*., subd. (j)). Judge Montejano reasonably exercised her discretion when she recalculated child support based on Camren's stipulated minimum income.[15]

### III. Judge Montejano did not abuse her discretion when she awarded attorney fees pursuant to section 271.

A trial court may award attorney fees and costs as a sanction when the conduct of a party or attorney frustrates the state's public policy of promoting settlement and reducing litigation costs through mutual cooperation of the parties and their counsel. (§ 271, subd. (a); *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1317, 1318 (*Tharp*).) "In making an award … the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction … that imposes an unreasonable financial burden on the party against whom the

---

[15] The court retains jurisdiction over child support matters irrespective of agreements between parents. (See *Davis v. Davis* (1968) 68 Cal.2d 290, 291 ["child support agreements … subject to approval and control by the courts"].) This does not, however, foreclose the option to enforce and comply with otherwise valid stipulations. (See *Russell v. Superior Court* (1967) 252 Cal.App.2d 1, 8 ["The court has power to comply with, or completely disregard, the wishes and stipulations of the parties [as to support money]." (Fn. omitted.)].)

sanction is imposed." (§ 271, subd. (a); see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 828 [sanction must be scaled to payer's ability to pay and made in light of both parties' financial circumstances].) A sanctions order is reviewed for abuse of discretion and overturned """"only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.""" (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177.)

On appeal, both Camren and Franco focus on whether the former acted in bad faith. The parties mistakenly predicate an award of sanctions on such a showing. As we explained in an earlier case:

> "Section 271 does not require that the sanctioned conduct be frivolous or taken solely for the purpose of delay. Rather, the statute is aimed at conduct that frustrates settlement of family law litigation. Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel. 'Thus, a party who individually, or by counsel, engages in conduct frustrating or obstructing the public policy is thereby exposed to liability for the adverse party's costs and attorney fees such conduct generates.' [Citation.]" (*Tharp*, *supra*, 188 Cal.App.4th at p. 1318.)

The evidence shows that Camren, through Michner, initiated negotiations with Franco about the terms of the original judgment of dissolution, including child support recalculation, and sought to avoid "going back to court," "incurring attorney's fees," and "'rolling the dice.'" The parties subsequently entered into a stipulated agreement, drafted by Michner and ordered by Judge Shirk, recalculating child support using Franco's earnings as a teacher and, as a minimum, Camren's stipulated minimum income of $2,600 instead of the 2008 imputed monthly earning capacity of $3,000. Approximately two months before the effective date of August 1, 2011, Blanks provided Michner with documentation facilitating recalculation, including a DissoMaster report computing,

13.

based on the stipulated order, monthly child support payments of $457. She did not receive a reply. Franco, who began to pay this newly calculated amount, was later notified by DCSS that the child support order "can not be changed" because Camren "did not complete and return the required income and expense forms or requested documents." Thereafter, DCSS collected $1,812.55 from Franco's bank account and income tax refund for arrearage, compelling Franco to file a motion to enforce the stipulated order that was supposedly designed to avoid further litigation. Camren's reluctance to abide by the provisions of the stipulation that her former attorney drafted for her benefit frustrated the settlement and caused Franco to incur additional litigation expenses. Judge Montejano reasonably exercised her discretion when she imposed sanctions pursuant to section 271.

## DISPOSITION

The order granting Franco's motion to enforce the provisions of the stipulated order relating to child support recalculation and award attorney fees is affirmed. Costs are awarded to respondent.

_____
DETJEN, J.

WE CONCUR:

_____
LEVY, Acting P.J.

_____
KANE, J.

14.